Henry S. David (CA SBN 89297)
*hdavid@davidfirm.com*
Hayim M. Gamzo (CA SBN 307033)
*hgamzo@davidfirm.com*
The David Firm®
617 W. 7th Street, Suite 702
Los Angeles, California 90017
Telephone:    (213) 550-4020

Annie S. Wang (CA SBN 243027)
*annie@wangalc.com*
J. Andrew Coombs, Of Counsel (CA SBN 123881)
*andy@wangalc.com*
Wang Law Corporation
1150 Foothill Boulevard, Suite E
La Cañada Flintridge, California 91011
Telephone:    (818) 500-3200
Facsimile:    (818) 500-3201

Attorneys for Creditors
Seiko Epson Corporation
and Epson America, Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | **Case No. 3:18-bk-30016-HB** |
| ARTEM KOSHKALDA,[1] | **Chapter 11** |
| Debtor. | **REPLY DECLARATION OF ANNIE S. WANG IN SUPPORT OF MOTION BY CREDITORS SEIKO EPSON CORPORATION AND EPSON AMERICA, INC. (A) TO DISMISS CASE; OR (B) IN THE ALTERNATIVE, FOR APPOINTMENT OF A TRUSTEE, RELIEF FROM STAY ETC.** |
| | **Date:    March 8, 2018** |
| | **Time:    10:00 a.m.** |
| | **Place:    Courtroom 19** |

---

[1]     The last four digits of Debtor's Social Security number are 2658, and the Debtor asserts that his principal place of business is 338 Potrero Ave., San Francisco, CA 94103.

Case: 18-30016    Doc# 51    Filed: 02/02/18    Entered: 02/02/18 20:33:24    Page 1 of 17

I, Annie S. Wang, declare as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of California, all of the District Courts in California, the District of Nevada, and the Ninth Circuit. Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2. I represent Creditors Seiko Epson Corporation ("Seiko") and Epson America, Inc. ("Epson," and together with Seiko, "Movants"), in this bankruptcy and the case entitled <u>Seiko Epson Corporation et al. v. InkSystem LLC et al.</u>, Case No. 3:16-cv-00524-RCJ-VPC pending in the United States District Court for the District of Nevada (the "Infringement Action").[2]

## A. <u>Violation of Discovery Orders, and Other Discovery Abuses</u>

3. In his opposition (the "Opposition") to Movants' Motion to Dismiss etc., Artem Koshkalda ("Debtor") argues that the Nevada District Court—both Magistrate Judge Valerie P. Cooke ("Magistrate Judge Cooke") who was intimately involved in the parties' discovery disputes in the Infringement Action and District Judge Robert C. Jones ("Judge Jones") presiding over the Infringement Action—erroneously concluded that Debtor and his limited liability company ART, LLC ("ART") engaged in discovery and other litigation abuses, and that such errors were due to misrepresentations by Movants.[3] In connection with, among other things, Movants' Motion for Default Judgment, Debtor and ART made precisely that argument to the Nevada District Court, which rejected it. In fact, Debtor and ART violated **multiple** discovery orders, and engaged in other discovery abuses, detailed below:

---

[2] Unless otherwise indicated, all references to the "Docket" and "Dkt." in this Reply Declaration refer to the Docket <u>in the Infringement Action</u>.

[3] Opposition ["Opp."], 1 [n.2], 5:12–8:7, 9:4-6.

— **Failure to Adequately Produce Documents and Responses to Discovery**

4.      On December 13, 2016, Movants propounded Interrogatories and Requests for Documents to the defendants in the Infringement Action (the "Defendants"), including Debtor and ART.  Movants granted the Defendants and others informal extensions to respond and produce documents.

5.      On February 3, 2017, after the Defendants disregarded those extended deadlines, Magistrate Judge Cooke further extended their time to respond and produce documents to March 6, 2017.  In her minute order, Magistrate Judge Cooke set March 6, 2017 as a "final" extension, and cautioned that "no further extensions will be granted."[4]

6.      On March 6, 2017, the Defendants, including Debtor and ART, provided initial responses and a production of documents, but improperly designated all of the documents as "Attorneys' Eyes Only."  Moreover, those discovery responses were also seriously deficient.  Therefore, in March 2017, counsel for the Defendants and Movants met and conferred several times regarding those responses.

7.      On March 24, 2017, Movants sent Defendants a detailed letter regarding the extensive deficiencies in the discovery responses and document production and Movants' intention to seek sanctions.

8.      On March 28, 2017, Movants took the deposition of Debtor, as the person whom ART designated under Rule 30(b)(6).  At that deposition, Debtor testified that ART had failed to produce relevant, responsive documents.  For example, Debtor testified that ART provided only those documents that were "handy, close", and ART had a list of Amazon accounts, supplier documents, chip

---

[4]      Reply Request for Judicial Notice ("Reply RfJN"), Ex. 42 (February 3, 2017 minutes of proceedings [Dkt. 55]).

Case 18-30016   Doc# 51   Filed 02/02/18   Entered 02/02/18 20:33:24   Page 3 of 17

supplier information, net profit information, list of real estate purchases, and outstanding accounts receivable that he/it had not produced.[5]

9. Subsequently, Defendants, including Debtor and ART, produced only a few tax returns. So, on April 10, 2017, Magistrate Judge Cooke set a further case management conference for April 17, 2017, and ordered the Defendants, including Debtor and ART (through counsel), to appear in person and be prepared to produce the documents responsive to Movants' written discovery requests.[6]

10. On April 17, 2017, Debtor appeared at the hearing, but produced no documents.[7] Magistrate Judge Cooke warned him to follow the Court's orders, among other things.

11. On May 1, 2017, the parties filed a "Joint Discovery Status Report, Stipulated Discovery Plan, and [Proposed] Scheduling Order" (the "Joint Status Report"), in which Movants agreed to give Defendants, including Debtor and ART, a final extension until May 9, 2017 to meet their discovery obligations, including to provide supplemental discovery responses and to produce documents.[8] The Joint Status Report included an explicit statement that "Defendants understand and acknowledge that should they fail to make comprehensive responses, productions and revised designations by that date, [Movants] request that the Court issue sanctions, including striking of Defendants' Answers, entry of default, and an award of attorneys' fees and costs

---

[5] Ex. 59 to this Reply Declaration (March 28, 2017 transcript of Debtor's deposition, 61:7-63:8, 99:24-100:19, 115:20-116:5, 159:13-162:24, 203:12-204:5, 218:22-219:22, 231:23-232:9 (same), 253:21-23, 261:9-15, 294:9-21, 323:6-7, 329:7-23) (See paragraph 24, below).

[6] Debtor's Request for Judicial Notice ("DRfJN"), Ex. 2 (April 10, 2017 minutes of proceedings [Dkt. 65]).

[7] DRfJN, Ex. 3 (April 17, 2017 minutes of proceedings [Dkt. 69]).

[8] Reply RfJN, Ex. 43 [Joint Discovery Status Report, Stipulated Discovery Plan, and Proposed Order [Docket No. 71]).

Case 1:18-bk-30015-Halda: Reply DSL of Amy S. Williams/02/02/18 20:33:24 Page 4 of 17
In re: Suzuki Brkda: Reply DSL of Amy S. Williams
Motion to Dismiss

ASW Reply Decl0003

related to their prolonged and unexcused deficiencies."[9] (On May 10, 2017, Magistrate Judge Cooke entered the Proposed Order.[10])

12. Notwithstanding the parties' agreement in the Joint Status Report and Magistrate Judge Cooke's order, Movants received no discovery responses when they were due.

13. On May 26, 2017, therefore, Movants moved to compel discovery responses and production and for sanctions (the "First Sanctions Motion") against Defendants, including Debtor and ART.[11] Defendants did not file any opposition, nor did they make a motion or even an informal request to Movants' counsel for additional time to respond to the First Sanctions Motion.

14. On June 8, 2017, Magistrate Judge Cooke held a case management conference and heard the First Sanctions Motion. At the hearing (which was the seventh appearance that the parties made before Magistrate Judge Cooke involving discovery[12]), Magistrate Judge Cooke stated:

> Well, what can I say? I'm just really at a loss having never encountered this kind of conduct in a piece of litigation, civil litigation in federal court, having never encountered the consistent disobedience to what the Court considers pretty straightforward court orders and pretty straightforward discovery requests.[13]

---

[9]     Reply RfJN, Ex. 43 (Joint Discovery Status Report, Stipulated Discovery Plan, and Proposed Order, 2:20-24 [Dkt. 71]).

[10]     RfJN, Ex. 44_ (Dkt. 72 [Order]).

[11]     DRfJN, Ex. 1 (first sanctions motions [Dkt. 80]).

[12]     Reply RfJN, Exs. 42, 48, 49 (minutes orders re case management conferences [Dkts. 46, 55, and 59]); DRfJN, Exs. 3, 4 (same [Dkts. 69, 70]); RfJN, Ex. 9 (same [Dkt. 84]).

[13]     Reply RfJN, Ex. 45 (Transcript of June 8, 2017 hearing, 17:11-16 [Dkt. 243]).

Case: 18-30035   Doc# 51   Filed: 02/02/18   Entered: 02/02/18 20:33:24   Page 5 of 17

1    (Magistrate Judge Cooke directed these comments to defense counsel—who at

2    that time represented Debtor and ART, as well as other defendants.)  Magistrate

3    Judge Cooke continued:

4              I don't know. What I'm asking, sir, is -- I suspect it is

5              occurring to you that your time is running out. The Court's

6              patience has run out, and the Court has very serious concerns

7              about whether your clients or you have any intention of

8              providing the discovery that has been requested. You've been

9              asked and asked and asked.[14]

10   Magistrate Judge Cooke further stated:

11             If there are any further issues with respect to this

12             discovery, I will expect the plaintiffs to file a report with this

13             court filing a motion to compel, and they can renew their

14             request for other forms of relief, including case-ending

15             sanctions, and that would be items five, six and seven of the

16             proposed order at docket 80-13, and other relief they will

17             request.          And just in case you're unclear about how close

18             you are to having this case ended on account of the record

19             before this Court, let me assure you I will do it. It's very, very

20             rare that a district judge or a magistrate judge will go to that

21             extreme, but you gentlemen are making a great case for that

22             to happen.[15]

23

24

---

25   [14]     Reply RfJN, Ex. 45 [June 8, 2017 hearing transcript, 19:17-22
26   [Dkt. 243]).
     [15]     Reply RfJN, Ex. 45 [June 8, 2017 hearing transcript, 22:7-13, 22:24 – 23:4
27   [Dkt. 243]).

28

Case 1:18-cv-30015-Rulda: Reply DSH of Ami ASW 02/02/18     Doc# 51     Filed: 02/02/18     Entered: 02/02/18 20:33:24     Page 6 of 17
Motion to Dismiss

ASW Reply Decl0005

15.     At that same June 8, 2017 hearing, Magistrate Judge Cooke further ordered that the Defendants, including Debtor and ART, make certain discovery responses and productions by no later than June 16, 2017.[16]

16.     On June 16, 2017, Defendants produced certain documents.  But, that supplemental production consisted of documents that <u>Movants</u> had obtained through numerous subpoenas Movants issued to Defendants' third-party service providers due to Defendants' discovery defaults, and then voluntarily produced to Defendants as Defendants conducted no discovery of their own.  Movants' intentionally placed page dividers were even replicated in this purported production.  Debtor and ART did not produce their Amazon identifications, preventing Movants from identifying the full scope of their sales, the list of properties they purchased using proceeds from Epson sales, accounting records or other promised information.  In addition, Debtor and ART did not fully "IDENTIFY" the entities and individuals involved in their counterfeiting operation.  As a result of Defendants' conduct, Movants never learned the true extent and reach of Defendants' infringement.

17.     On June 28, 2017, Movants renewed their motion to compel and for terminating sanctions (the "Second Sanctions Motion") against certain Defendants, including Debtor and ART.[17]  Continuing with their gamesmanship, Defendants' brief conceded they did not fully comply, describing their compliance as "substantial."  Debtor supplied a declaration in which he did not say that he had produced all information and documents in his possession, custody and control, but that in <u>his</u> (inaccurate) opinion as to the "one remaining issue," he had no additional documents to produce and he conveniently stated that "[h]ad Plaintiffs not issued numerous subpoenas that would have duplicated my efforts, I

---

[16]     RfJN, Ex. 9 (June 8, 2017 minutes of proceeding [Dkt. 84]).
[17]     DRfJN, Ex. 5 (second sanctions motion [Dkt. 91]).

would have to have requested all my ... documents from the same third parties to which Plaintiffs issued their subpoenas".[18]  Plaintiffs, in fact, were forced to engage in extensive third-party discovery in light of Defendants' defaults and continued to obtain additional documents from Debtor's and ART's third-party service providers, documents which were never produced by Defendants in discovery, confirming the efficacy of Defendants' strategy to keep Movants in the dark.

18.     On July 14, 2017, Magistrate Judge Cooke held another case management conference and heard the Second Sanctions Motion.  At the hearing, Magistrate Judge Cooke stated:

>          Well, I don't believe -- I could be mistaken, but I don't
>          believe that on the nearly 18 years as a United States
>          Magistrate Judge I have ever issued case ending sanctions for
>          the reasons set out in the parties' respective briefs and the
>          public policy in our country favoring the disposition of cases
>          on the merits.
>
>          That having been said, I have also, on the other hand,
>          never encountered the level of obstructionism and failure to
>          respond to the most basic discovery requests that are allowed
>          pursuant to our Federal Rules of Civil Procedure.
>
>                          * * * * *
>
>          So I have to say the defendants by their conduct and
>          what appears to be very cavalier approach to how legal
>          proceedings occur in the United States has led us to this very
>          unfortunate point. [19]

---

[18]     Reply RfJN, Ex. 46 (Declaration of Koshkalda, [Ex. 1 to Dkt. 94]).
[19]     Reply RfJN, Ex. 47 (July 14, 2017 hearing transcript, 18:6-24 [Dkt. 244]).

Case 18-30016   Doc# 51   Filed 02/02/18   Entered 02/02/18 20:33:24   Page 8 of 17

ASW Reply Decl0007

19.     On August 3, 2017, Magistrate Judge Cooke recommended terminating sanctions against certain Defendants, including Debtor and ART, and to have their defaults entered.[20]

20.     On August 22, 2017, District Judge Jones, after *de novo* review, adopted Magistrate Judge Cooke's Report and Recommendation granting Movants' motion for terminating sanctions, and ordered the Clerk of the Court to enter the defaults of certain Defendants, including Debtor and ART.[21]

—      **Violations of Other Discovery Orders**

21.     In addition to their failures to adequately produce documents and respond to discovery, Debtor and ART also violated other discovery-related court orders:

22.     On April 21, 2017, Magistrate Judge Cooke ordered individual defendants (including Debtor) to appear at all case management conferences in light of the discovery issues.[22]  Debtor violated that order when he failed to appear at the Case Management Conference on August 7, 2017, at which his deposition was supposed to be set.[23]  As a consequence, his individual deposition was not taken in the District Court case.

23.     On May 23, 2017, Magistrate Judge Cooke set a schedule for the filing of case management reports prior to any case management conferences.[24]  Debtor did not fully meet those deadlines.[25]

---

[20]     RfJN, Ex. 11 (August 3, 2017 report and recommendation [Dkt. 112]).
[21]     RfJN, Ex. 14 (August 22, 2017 order [Dkt. 160]).
[22]     DRfJN, Ex. 4 (April 21, 2017 minutes of proceedings [Dkt. 70]).
[23]     RfJN, Ex. 12 (August 7, 2017 minutes of proceedings [Dkt. 136]).
[24]     RfJN, Ex. 1 (Docket Sheet [see Dkt. 74, text-only minute order]).
[25]     See generally RfJN, Ex. 1 (Docket Sheet), 9 (minute order [Dkt. 84]).

## B.    Debtor's Other Material Misstatements Regarding the Infringement Action

24.    I attach as Exhibit 59 to this Reply Declaration a true copy of the caption pages, pages 34, 36, 39, 61-61, 99-100, 110-111, 115-116, 159-162, 191-196, 127, 203-204, 213-215, 217-219, 229-232, 246-247, 253, 261, 266-270, 292, 315-320, 323, and 329, and the certification page of the deposition of Debtor, the Rule 30(b)(6) designated witness for ART, in the Infringement Action.

25.    I attach as Exhibit 60 to this Reply Declaration a true copy of the caption page, pages 13-14, 24, 79, 80, 83, 164, and 166-167 and the certification page of the deposition of Andriy Kravchuk, the Rule 30(b)(6) designated witness for Inksystem, LLC, in the Infringement Action.

26.    In its Opposition, Debtor makes a number of other misstatements about the state of, and the events in, the Infringement Action, which I address below:

27.    Debtor claims that the District Court case is still in the discovery stage.[26]  The discovery cutoff, however, was August 9, 2017.  Further, Defendants never propounded any discovery of their own.[27]

28.    Debtor claims that he and his company ART are innocent buyers and re-sellers of Epson cartridges.[28]  However:

    (A)    Debtor instructed co-defendant Bielov to "delete" an instructional video re the counterfeit labels;[29]

---

[26]    Opp., 21:1-3, 15-17.
[27]    Reply RfJN, Ex. 50 (May 23, 2017 order [Dkt. 75]).
[28]    Opp., 3:3-5, 3:24–4:7.
[29]    Ex. 59 to this Reply Declaration (March 28, 2017 transcript of Debtor's deposition, 246:9-247:14, Ex. 20 [email in which Koshkalda instructs Bielov to delete YouTube video of person applying counterfeit label to a manipulated cartridge]).

- 10 -

In re Koshkalda: Reply Decl. of Annie S. Wang ISO
Motion to Dismiss

ASW Reply Decl0009

(B)   ART supplied Karine LLC, which Amazon kicked off of its
website for selling counterfeits;[30]

(C)   Counterfeit packaging components were linked to Karine
LLC;[31]

(D)   Numerous customs seizures demonstrate that ART's product
was not genuine when purchased,[32]

(E)   The cartridges that ART sold Inksystem failed their own
authentication procedures;[33]

(F)   Debtor, ART's principal, also personally visited 75 Bank
Street, the location of the counterfeit manufacturing
operation, paid the rent for that location on occasion, and
sensitive financial documents for Debtor and ART were
found there during the seizure including blank, signed
checks;[34]

(G)   ART, through Debtor, helped source empty and Epson ink
cartridge parts that he knew were used to rebuild cartridges;[35]

---

[30]   Ex. 59 to this Reply Declaration (March 28, 2017 transcript of Debtor's
deposition, 110:11-111:20, 266:12-270:16 [numerous customer complaints
regarding errors and defects in the allegedly "new" and "genuine" Epson branded
ink cartridges], 316:11-320:2 [re Affiliation and Joint Venture Agreement with
Karine LLC]).

[31]   Reply RfJN, Ex. 51 (September 7, 2016 declaration of Herb Seitz in
support of motion for temporary restraining order, ¶ 3 [Dkt. 7]).

[32]   Reply RfJN, Ex. 51 (September 7, 2016 declaration of Herb Seitz in
support of motion for temporary restraining order, ¶¶ 4, 5 [Dkt. 7]).

[33]   Ex. 60 to this Reply Declaration (transcript of Inksystem's deposition,
13:23 – 14:1 [Debtor supplied chips], 24:12-15 [Debtor as supplier of cartridges],
164:13-17, 166:19 – 167:3).

[34]   Ex. 59 to this Reply Declaration (March 28, 2017 transcript of Debtor's
deposition, 127:5-11, 191:10 – 194:2, 194:25 – 196:21, 315:9 – 316:2).

[35]   Ex. 59 to this Reply Declaration (March 28, 2017 transcript of Debtor's
deposition, 213:25 – 215:4).

In re Arturo Quintela:   Reply Decl. of Annette S. Wong ISO
Motion to Dismiss

ASW Reply Decl0010

(H) Debtor supplied the integrated circuit chips knowing they were used for the remanufacturing process;[36] and

(I) Debtor also supplied other components like the vacuum bags (which he referred to as "sleeves") and the vacuum sealing machines used in the remanufacturing process.[37]

(J) The Court froze Debtor's and ART's assets only after Movants made:

    (1) a strong showing of success on the merits,

    (2) Defendants engaged in extensive discovery defaults, which were clearly designed to obstruct and delay, and

    (3) Movants demonstrated that Defendants, and in particular, Debtor and ART, were transferring and secreting the proceeds of their infringing conduct;[38] and

(K) Movants, with the aid of the U.S. Marshals, executed the Court's first seizure order at Defendants' numerous locations, including their manufacturing plant at 75 Bank Street, and ART's corporate address, where boxes of counterfeit Epson components were found.[39]

---

[36] Ex. 59 to this Reply Declaration (March 28, 2017 transcript of Debtor's deposition, 204:6 – 204:20, 229:17 – 230:18).

[37] Ex. 59 to this Reply Declaration (March 28, 2017 transcript of Debtor's deposition, 217:24 – 218:10, 232:10-18 [lists out components, cartridges, chips, empties, sleeves, and the machinery—essentially everything used in the remanufacturing process]).

[38] RfJN, Exs. 4 (First Freeze/Impoundment Order, ¶ 1 [Dkt. 159]), 5 (Second Freeze/Impoundment Order, ¶ 1 [Dkt. 251]), 6 (Temporary Restraining Order, ¶ 1 [Dkt. 9]).

[39] RfJN, Ex. 7 (Declaration re Seizure, ¶ 4 [Dkt. 17]).

29.     Debtor claims that he and ART unable to retain counsel and he was unable to pay the mortgages on certain real estate.[40]  Yet, Movants offered to stipulate for Debtor to have access to additional funds on numerous occasions if he would fully disclose his assets, but he refused.

30.     Also, Debtor claims that his counsel withdrew due to the asset freezes.  In fact, Debtor told counsel to stop work.[41]  Movants offered by telephone and in writing with former counsel to discuss reasonable modifications to the asset freeze to address concerns over fees, but no response was ever received.[42]  Debtor also had other retained counsel in cases filed after receiving notice of the asset freeze where he was the plaintiff.[43]

31.     Debtor claims that the District Court's temporary restraining order (the "TRO"), order for asset seizure and impoundment, and amended order for asset seizure and impoundment (together, the "Freeze Orders") rendered him destitute.[44]  However:

    (A)     Debtor had additional, undisclosed streams of income, which he used in violation of the Freeze Orders[45] and

    (B)     Debtor never stopped paying for and contracting to buy houses even after the District Court entered the Freeze

---

[40]     Opp., 8:8-9:12, 10:17-25.
[41]     RfJN, Ex. 1 (Docket Sheet [see Dkt. 117, text-only minute order).
[42]     Reply RfJN, Ex. 52 (Declaration of Annie S. Wang at ¶ 2 and Ex. A. [Dkt. 171]).
[43]     Reply RfJN, Ex. 53 (Complaint and initiating documents filed on August 21, 2017, in the case entitled Andriy Kravchuk v. City and County of San Francisco, Case No. CGC-17-560850, in the Superior Court of California [Dkt. 192, Ex. A])
[44]     Opp. 8:8, 9:7-12, 9:21 – 10:1.
[45]     Reply RfJN, Ex. 54 [motion to appoint receiver, Ex. 2 [tenant emails re rents] [Dkt. 274-1]).

Orders[46]—and Debtor did not account for those proceeds;
and

(C)     Debtor voluntarily appeared at numerous hearings in Reno,
Nevada, in his co-defendants' bankruptcy proceedings after
the asset seizure, when his appearance was not necessary.[47]

32.     Debtor claims that ART had business other than dealing in
infringing Epson ink cartridges, and "Epson ink cartridges were a small
percentage of its sales."[48]  In Debtor's deposition, however, Debtor testified that
the Epson ink cartridge business was 80%-90% of all sales.[49]

33.     Debtor claims that the Freeze Orders bar him from servicing debts
on his properties.[50]  Yet, he continued to make payments on these properties and
tried to pay off a few of them while the Freeze Orders were in effect.[51]

---

[46]     RfJN, Ex. 27 (Debtor's and ART's motion to vacate the TRO, Ex. 5
[Dkt. 162]); Reply RfJN, Exs. 55 (August 22, 2017 motion by Debtor to release
funds, Ex. 8 [mortgage payments on August 10, 2017] [Dkt. 174]); 56 (September
25, 2017 opposition, Ex. A [demand of payoff of real estate loan by Koshkalda
around September 1, 2017] [Dkt. 213]); 57 (Declaration of Annie S. Wang, Ex. B
[real estate purchase on August 5, 2017], Ex. G (additional real estate loan
identified with payment made 9/11/17] [Dkt. 218]); Amended Voluntary Petition
[Dkt. 36 in this action], Schedule G (38th page of pdf).)

[47]     Reply RfJN, Ex. 57 (Declaration of Annie S. Wang, at ¶¶ 6-7, Ex. E, pp.
61-66 of 79 [Dkt. 218])

[48]     Opp., 1:23 – 2:3, 3:21-23.

[49]     Ex. 59 to this Reply Declaration (March 28, 2017 transcript of Debtor's
deposition, 34:14-23, 36:5-11, 39:7-15).

[50]     Opp., 2:10-12.

[51]     Reply RfJN, Exs. 55 (August 22, 2017 motion by Debtor to release funds,
Ex. 8 [mortgage payments on August 10, 2017] [Dkt. 174]); 56 (September 25,
2017 opposition, Ex. A [demand of payoff of real estate loan by Debtor around
September 1, 2017] [Dkt. 213]); 57 (Declaration of Annie S. Wang, Ex. B [real
estate purchase on August 5, 2017], Ex. G (additional real estate loan identified
with payment made 9/11/17] [Dkt. 218]); Amended Voluntary Petition [Dkt. 36 in
this action] in Debtor's bankruptcy (Case No. 3:18-bk-30018), Schedule G (38th
page of pdf).

- 14 -

34. Debtor claims that Debtor and ART are not related to Inksystem or Lucky Print.[52] However, Andriy Kravchuk, the principal of Inksystem LLC, works for ART, and Debtor worked for Inksystem.[53] Further, Debtor appeared at the creditor's meeting, the Rule 2004 examinations, and subsequent hearings in the Inksystem LLC/Lucky Print LLC bankruptcies until those bankruptcies were dismissed as having been filed in bad faith.[54]

35. Debtor claims that Debtor and ART were unrelated to the other defendants in the Infringement Action and the infringing activity.[55] However:

(A) I am informed and believe that Debtor, who is the Managing Member of ART, was listed as the "notify party" for the shipment of cartridges imported by AF LLC that Customs seized. Indeed, I am informed and believe that Debtor was listed as the owner of the telephone number posted on the door of Inkredible LLC LLC;[56]

(B) Kravchuk was the managing member of InkSystem, and testified that <u>he</u> did not know about counterfeit sales because <u>his</u> sole job was to supervise the manufacturing of counterfeits from grey market cartridges with counterfeit IC chips, labels, and packaging.[57]

(C) Debtor has significant relationships with Mariia Kravchuk. Debtor testified that Ms. Kravchuk is the conveniently offshore sister of

---

[52] Opp., 2:23-25.
[53] Reply RfJN, Ex. 58 (Declaration Under Penalty by Non-Individual Debtor [Dkt. 41 in ART's bankruptcy], p.14 [Kravchuk has a priority wage claim of $11,835.00]); Exs. 59 (March 28, 2017 transcript of Debtor's deposition, 23:10 – 24:6); and 60 (June 1, 2017 Transcript of Inksystem's Deposition, 83:14-17) to this Reply Declaration;
[54] Reply RfJN, Ex. 57 (Declaration of Annie S. Wang, ¶ 6, Ex. E, pp. 61-66 [Dkt. 218]).
[55] Opp., 2:23-25, 16:9-10.
[56] Reply RfJN, Ex. 51 (September 7, 2016 declaration of Herb Seitz in support of motion for temporary restraining order, ¶¶ 5, 22 [Dkt. 7]).
[57] Ex. 60 to this Reply Declaration (June 1, 2017 Transcript of Inksystem's Deposition, 79:5-80:6).

Motion to Dismiss

Andriy Kravchuk, a co-defendant in the Infringement Action, and, according to Debtor's schedules, an employee of Debtor in the second half of 2017. Further, in real estate transactions in which Debtor and Ms. Kravchuk were involved together, Ms. Kravchuk used as her address 1280 Terminal Way, Suite 28, Reno, NV 89502—Debtor's address (even on its petition in this bankruptcy). I attach as Exhibit 61 to this Reply Declaration a true copy of a Residential Purchase Agreement. I received that Agreement pursuant to a subpoena to Summerhill Homes, the seller. (Debtor and ART filed a redacted copy of this document with the Nevada District Court.) That Agreement shows (A) Ms. Kravchuk's address as the Terminal Way address, and (B) Ms. Kravchuk and Debtor, together, as the buyer. At his December 18, 2017 examination, Debtor claimed he could not know that, or why, Ms. Kravchuk's address was identified as the Terminal Way address. (See page 45, lines 18 to 24, of the transcript, Exhibit 37 to the moving Declaration of Henry S. David [Dkt. 26].)

36. I attach as Exhibit 62 to this Reply Declaration a true copy of a February 2, 2018 printout from a website for "OREM Accounting Tax," describing Debtor's tax experience.

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

I am executing this Reply Declaration on this 2nd day of February 2018, in La Cañada Flintridge, California.

_Annie S. Wang_

- 16 -

## INDEX OF EXHIBITS

| Ex. No. | Description |
|---------|-------------|
| 59 | March 28, 2017 Transcript of ART LLC Deposition |
| 60 | June 1, 2017 Transcript of Inksystem LLC Deposition |
| 61 | Summerhill Home purchase agreement |
| 62 | Website printout |

In re Aquarius Canada: Reply Decl. of Annie S. Wang iso<br>Motion to Dismiss

ASW Reply Decl0016