Henry S. David (CA SBN 89297)
hdavid@davidfirm.com
Hayim M. Gamzo (CA SBN 307033)
hgamzo@davidfirm.com
The David Firm®
617 W. 7th Street, Suite 702
Los Angeles, California 90017
Telephone: (213) 550-4020
Facsimile: (213) 550-4010

Annie S. Wang (CA SBN 243027)
annie@wangalc.com
J. Andrew Coombs, Of Counsel (CA SBN 123881)
andy@wangalc.com
Wang Law Corporation
1150 Foothill Boulevard, Suite E
La Cañada Flintridge, California 91011
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Creditors
Seiko Epson Corporation
and Epson America, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>    Artem Koshkalda,[1]<br><br>        Debtor. | **Case No. 3:18-bk-30016-HB**<br><br>**Chapter 11**<br><br>**REPLY MEMORANDUM OF LAW BY CREDITORS SEIKO EPSON CORPORATION AND EPSON AMERICA, INC. IN SUPPORT OF THEIR MOTION FOR RELIEF FROM AUTOMATIC STAY— ACTION IN NONBANKRUPTCY FORUM**<br><br>**Date: March 8, 2018**<br>**Time: 10:00 a.m.**<br>**Place: Courtroom 19** |

---

[1] The last four digits of Social Security number are 2658, and Debtor now asserts that his residence is 338 Potrero Ave., Apt. 402, San Francisco, CA 94103-5073.

In re Koshkalda: Reply Memo. of Law i/s/o Motion for Relief from Automatic Stay

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................ 1
II. STATEMENT OF FACTS ................................................................... 2
    A. Debtor's Claim That He Did Not Infringe ................................. 2
    B. The Status of the Infringement Action ...................................... 4
    C. The Effect of the Freeze Orders on Debtor's Ability to "Defend" Himself ........................................................................ 6
    D. Debtor' Contempt/Arrest Warrant ............................................. 6
    E. Debtor's "Offer" to Dismiss Its Void Appeal ............................. 7
III. LEGAL ARGUMENT ......................................................................... 7
    A. Estimation Is Not the Panacea That Debtor Assumes ................ 7
    B. Epson Has Demonstrated "Cause" for Relief from the Automatic Stay to Complete the Infringement Action ................ 9
    C. The Stay Should be Annulled, Retroactive to the Nevada District Court's Entry of the Default Judgment ....................... 13
IV. CONCLUSION ................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

Burger King Corp. v. Mason, 710 F.2d 1480 (11th Cir. 1983) ................................. 4

Enesco Corp. v. Price/Costco Inc., 146 F.3d 1083 (9th Cir. 1998) .......................... 4

Geddes v. United Fin. Grp., 559 F.2d 557 (9th Cir. 1977)....................................... 3

Holmes v. Grubman, 315 F.Supp.2d 1376 (M.D. Ga. 2004) ................................... 9

In re Anton, 145 B.R. 767 (Bankr. E.D.N.Y. 1992) ................................................ 10

In re Bellucci, 119 B.R. 763 (Bankr. E.D. Cal. 1990) .............................................. 9

In re Chateaugay Corp., 944 F.2d 997 (2d Cir. 1991) ............................................ 8

In re Consolidated Distributors, Inc., 2013 WL 3929851
    (Bankr. E.D.N.Y. 2013) ..................................................................................... 12

In re Imperial Bankcorp., Inc., 2012 WL 10710 (S.D. Cal. Jan. 3, 2012) ............... 9

In re Neal, 176 B.R. 30 (Bankr. D. Id. 1994) ......................................................... 12

In re SCO Group, Inc., 395 B.R. 852 (Bankr. D. Del. 2007) ................................. 12

In re Tucson Estates, Inc., 912 F.2d 1162 (9th Cir. 1990) ..................................... 11

In re Unioil, 54 B.R. 192 (Bankr. D. Colo. 1985) .................................................. 10

Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614 (9th Cir. 1993) ................................. 4

Piombo Corp. v. Castlerock Prop. (In re Castlerock Prop.),
    781 F.2d 159 (9th Cir. 1986) ........................................................................... 12

Rolex Watch USA, Inc. v. Michel Co., 179 F.3d 704 (9th Cir. 1999) ..................... 4

Security Farms v. Int'l Bd. of Teamsters, 124 F.3d 999 (9th Cir. 1999) ................. 9

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990) ............................................................................ 9

Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc., 106
    F.3d 894 (9th Cir. 1997) ................................................................................... 4

**Statutes**

11 U.S.C § 364(a) ...................................................................................................... 6

11 U.S.C. § 101(5) ..................................................................................................... 8

11 U.S.C. § 502(c) ..................................................................................................... 8

28 U.S.C § 157(d) ................................................................................................. 9, 12

## I. INTRODUCTION

In his opposition to Epson's[2] Motion for Relief from Automatic Stay, Debtor continues his "Big Lie" approach—claiming that Epson's trademark attorneys are so good that they schnookered the Nevada District Court into issuing a TRO, a seizure order, a preliminary injunction, asset freeze orders, multiple monetary sanctions orders, a contempt order/arrest warrant, terminating sanctions, <u>and</u> an order granting a default judgment, <u>all</u> without evidence of (A) infringement or (B) discovery abuses. The record—the <u>evidence</u>—demonstrates to the contrary. This Court should grant Epson's Motion for Relief so that the Court best equipped to address Debtor's arguments—the Nevada District Court—may do so.

Bankruptcy is designed to give a debtor a "fresh start"—a fresh start to conduct his post-petition business without the burden of his pre-petition debts. But bankruptcy does not give a debtor a "fresh start" to relitigate matters that already have been litigated. Or to forum shop—hoping to find a judge before whom the debtor has not (yet) ignored his discovery obligations and court orders.

In the Infringement Action, Debtor, not just his co-defendants, defaulted on his discovery obligations—as the Nevada District Court <u>repeatedly</u> found. Debtor suggests that instead of letting the Nevada District Court finish its nearly-completed job, as Epson requests, this Court should decide whether the Nevada District Court erred and/or whether sale of certain properly seized ink cartridges (the "Seized Products"[3]), which defendants used in their counterfeiting operation,

---

[2] Capitalized terms used in this Reply Memorandum of Law shall have the same meanings ascribed to them in Epson's moving Memorandum of Law [Dkt. 57], unless otherwise indicated.

[3] The infringing Seized Product consists of many different types of items: counterfeit, "remans" (empty cartridges, which had their labels peeled off in preparation of being turned into counterfeits), opened genuine cartridges (which is the same as infringing products), and unopened foreign and other cartridges. Reply Declaration of Annie S. Wang, ¶ 36.

would violate the Preliminary Injunction that the Nevada District Court issued. Clearly, judicial economy, and comity, suggest that Debtor's approach would serve no legitimate purpose.

Debtor then restates his intent to file a motion to estimate Epson's claim. That "solution" will not result in the "do over" of the Infringement Action that Debtor desperately seeks because, among other things, that motion will be subject to mandatory abstention and, most likely, transfer to the Nevada District Court. More importantly, an estimation of Epson's claim for voting and distribution purposes will not dissolve the outstanding Preliminary Injunction.

Debtor also argues that estimation of Epson's claim is necessary to monetize the real estate that Debtor's numerous companies own. Yet, Debtor fails to explain why he cannot sell ("monetize") that real estate while he appeals to the Ninth Circuit.

For the foregoing reasons, Epson respectfully submits that the Court should grant the Motion for Relief, which relief should be retroactive for judicial and party economy reasons that Debtor does not dispute.

## II.　STATEMENT OF FACTS

### A.　Debtor's Claim That He Did Not Infringe

Debtor claims that his solely owned company, ART LLC ("ART"), itself in bankruptcy due to Debtor's management, and he are innocent victims—they were just unlucky to sell to infringers, and did nothing wrong.[4] The Nevada District Court has repeatedly concluded that Debtor is wrong factually and legally.[5] This

---

[4]　Opp., 2:16 – 3:16.
[5]　Motion to Dismiss Request for Judicial Notice ("Motion to Dismiss RfJN") in support of Epson's Motion to Dismiss [Dkt. 19], Exs. 3-6. (Due to the procedural setting of this case, with several motions to be heard concurrently with this Motion for Relief, and supported by voluminous, but overlapping evidence, Epson cites to its prior Requests for Judicial Notice.)

- 2 -

Court need not, and should not, revisit those rulings, but even a cursory review of the record—<u>the evidence</u>—demonstrates that Debtor is wrong.

As alleged in Epson's Second Amended Complaint, found by the District Court in numerous orders, and admitted by defendants' defaults,[6] Kravchuk and Debtor, through ART, InkSystem, and Lucky Print, infringed Epson's trademarks by importing, manufacturing, and selling counterfeit and materially altered cartridges. Even in his Opposition to Epson's Motion to Dismiss, Debtor admitted that ART supplied InkSystem cartridges and the non-Epson chips needed to make counterfeits.[7] The <u>genuine</u> Epson IC chips on cartridges are critical components, and alteration with non-Epson chips is an important step in the counterfeiting process.

Further, and perhaps most importantly, time and time again, the Nevada District Court rejected Debtor's unduly narrow view of their involvement and of what is, or is not, infringement. Debtor was involved in the direct infringement of Epson's trademarks through ART's importation of counterfeit ink cartridges and its role in the manufacturing and supply of those infringing cartridges. Debtor's wrongdoing also included conspiring with, and aiding and abetting, other infringers of Epson's trademarks,[8] selling refilled cartridges that actually contain non-Epson ink as genuine Epson cartridges, modification of cartridges, and genuine cartridges not meant for the U.S. market, expired (or near-expired)

---

[6] Motion to Dismiss RfJN, Ex. 14; <u>Geddes v. United Fin. Grp.</u>, 559 F.2d 557, 560 (9th Cir. 1977) (default admits allegations in complaint).
[7] Declaration of Artem Koshkalda [Dkt. 44], ¶ 9.
[8] Notably, Debtor now admits ART's primary customers, InkSystem and Lucky Print, are infringers. Opp., 4:19-21. Yet, Epson has demonstrated the cross-over between the various entities—and, indeed, Kravchuk, the member/manager of InkSystem and Lucky Print, is an employee of ART/Debtor.

- 3 -

cartridges, and selling cartridges not handled in the manner that Epson, the trademark owner, requires.[9]

Debtor's reference to ART's non-infringing business (such as beauty products)[10] is irrelevant (the preliminary injunction and the permanent injunction in the default judgment do not preclude non-infringement business). Further, Epson did not seize any such products.[11]

B. The Status of the Infringement Action

Debtor continues to assert that it committed no discovery defaults.[12] Debtor and ART, <u>not just</u> their co-conspirators, repeatedly violated the orders of the District Court and their discovery obligations.[13] The Nevada District Court repeatedly considered this issue. Notably, Debtor made <u>exactly</u> this same argument in opposition to Epson's Motion for Default Judgment, and <u>the Nevada District Court rejected it</u>.[14] It is telling that the Nevada District Court did <u>not</u>

---

[9] Reply Declaration of Annie S. Wang, ¶ 36; <u>Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.</u>, 106 F.3d 894, 900 (9th Cir. 1997) (reconditioned products with labels containing Westinghouse trademarks are "counterfeit"); <u>Intel Corp. v. Terabyte Int'l, Inc.</u>, 6 F.3d 614, 619-20 (9th Cir. 1993) (sale of modified and incorrectly described products infringed manufacturer's trademarks); see also <u>Rolex Watch USA, Inc. v. Michel Co.</u>, 179 F.3d 704 (9th Cir. 1999) (altered used Rolex watches were counterfeit, and infringed Rolex's trademarks). Even the unauthorized use of an original trademark can qualify as trademark counterfeiting. <u>Burger King Corp. v. Mason</u>, 710 F.2d 1480, 1491 (11th Cir. 1983) (holding franchisee liable for displaying the original Burger King marks after its right to do so had been revoked). Likewise, the "distribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image," and constitutes trademark infringement. <u>Enesco Corp. v. Price/Costco Inc.</u>, 146 F.3d 1083, 1087 (9th Cir. 1998) (citations omitted).
[10] Opp. 3:5.
[11] Reply Declaration of Annie S. Wang, ¶ 37; Motion to Dismiss RfJN [Dkt. 19], Exs. 7, 8 (Seizure Declarations).
[12] Opp., 4:22-7:28.
[13] Reply Declaration of Annie S. Wang, ¶¶ 3-23 and cited exhibits.
[14] Id.

- 4 -

issue terminating sanctions against <u>all</u> defendants;[15] clearly, that Court considered each defendant, including Debtor, on his/its own merits.

Debtor also notes that there has been no (final) determination of Epson's claims on the merits,[16] which, again, is true whenever parties make motions such as this Motion for Relief. Debtor filed for bankruptcy only <u>after</u> the Nevada District Court orally granted Epson's Motion for Default Judgment. This case was nearly concluded after years of litigation, and there is no merit to Debtor's argument that his rush to file for bankruptcy, to restart his gamesmanship, should negate the Nevada District Court's numerous orders. Debtor filed many pleadings on the merits;[17] Debtor is just unhappy that his games-playing in the Nevada District Court backfired, and his refusal to abide by the rules had consequences, of which the Nevada District Court repeatedly warned Debtor. Debtor's default in the Infringement Action was itself a litigated issue, and the subject of numerous filings and hearings, during which Debtor had counsel at least some of the time.

Further, Debtor's complaints about the status of the Infringement Action is misleading by its omissions: Debtor filed, and continues to prosecute, his Appeal, and his co-defendants, which are not in bankruptcy, also have appealed.[18] So, if Epson is denied relief from the automatic stay, there will, eventually, be two appeals—one by Debtor and Koshkalda and one by their co-defendants.

---

[15] Reply Declaration of Annie S. Wang, ¶¶ 19-20.
[16] Opp., 16:14-22
[17] Motion to Dismiss RfJN [Dkt. 19], Ex. 1 (Infringement Action Docket Sheet, Dkt. 153 [Debtor's objections to Magistrate Judge's reports and recommendations], 154, 173 [Debtor's motions to vacate preliminary injunction], 177 [Debtor's motion to obtain inventory]).
[18] Reply Declaration of Henry S. David, ¶ 3.

- 5 -

In re Koshkalda, Reply Memo of Law i/s/o Motion for Relief from Automatic Stay

Case: 18-30016   Doc# 72   Filed: 03/02/18   Entered: 03/02/18 14:07:49   Page 8 of 17

C.  The Effect of the Freeze Orders on Debtor's Ability to "Defend" Himself

Debtor claims that he could not defend himself because of the Freeze Orders,[19] which were issued well into the litigation and after most of Debtor's discovery defaults. Further, Debtor fails to respond—because there is no response—to Epson's points that (A) Debtor could have lawfully borrowed any needed defense funds *after* he obtained permission from the Nevada District Court (just as he now needs this Court's permission to borrow other than in the ordinary course of his business[20]), and (B) Epson offered to stipulate to Debtor borrowing money to pay for counsel—conditioned only on Debtor's compliance with the existing order that Debtor disclose his assets, which Debtor declined to do.[21]

More importantly, this issue is irrelevant to this Motion for Relief. Debtor and ART borrowed $200,000 pre-petition to finance their bankruptcies, and ART has requested to borrow another $350,000.[22]

D.  Debtor' Contempt/Arrest Warrant

Debtor tries, again, to explain *why* he knowingly and intentionally violated various orders in the Infringement Action.[23] Epson will not repeat its prior discussion of the events that led to the Nevada District Court holding Debtor in contempt and then issuing a warrant for his arrest, as they are not central to Epson's Motion for Relief. Suffice it to say, Debtor's reasons for his contumacious conduct were—and are—legally insufficient, and in many instances, counterfactual (for example, he claimed he could not appear in court when ordered, but he voluntarily elected to appear at the bankruptcies of

---

[19] Opp., 8:1-9:8.
[20] 11 U.S.C. § 364(a).
[21] Reply Declaration of Annie S. Wang, ¶ 29.
[22] Dkt. 93 in ART's bankruptcy (Case No. 3:18-bk-30014).
[23] Opp., 9:9-11:15.

- 6 -

InkSystem and Lucky Print, when he was not required to appear, and he appeared in the Infringement Action when it suited him, such as at the hearing on Epson's Motion for Appointment for a Receiver).

### E. Debtor's "Offer" to Dismiss Its Void Appeal

On the one issue on which the parties agree, Debtor's pending Appeal, filed in violation of the automatic stay, must be dismissed. But Epson must note an oddity: ART claims that "[a]s of the filing of this memorandum [February 26, 2018], Epson has not responded to this offer"[24] to amend the Default Judgment and dismiss the Appeal. Not only is this false (<u>Epson</u> proposed such a stipulation on February 9, 2018),[25] Debtor admits that "Epson (as of February 26, 2018) has agreed to so stipulate" to addressing the void Default Judgment and the void Appeal.[26] Debtor cannot keep his story straight, even as between ART and himself.

## III. LEGAL ARGUMENT

### A. Estimation Is Not the Panacea That Debtor Assumes

In his bankruptcy filings, Debtor has conceded that his goal in filing this bankruptcy is to get a "do over," to avoid the consequences of his past infringement and litigation abuses. Debtor waited to file for bankruptcy until the Nevada District Court granted Epson's Motion for Default Judgment (and Epson's motion for appointment of receiver). Now, Debtor asserts that through a motion to estimate Epson's claim, filed in this Court, ART, and hence he, will be able to resume their (infringing) business. Not so.

---

[24] ART's Opp. (Dkt. 48 in its bankruptcy), 8:1.
[25] Reply Declaration of Henry S. David, ¶ 4, Ex. 35 [February 9, 2018 email].
[26] Opp., 12:15-16.

- 7 -

Section 502(c)[27] provides

> There shall be estimated for purpose of allowance under this section—
>
> (1) any contingent or unliquidated <u>claim</u>, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2) <u>any right to payment</u> arising from a right to an equitable remedy for breach of performance.

(Emphases added.) Yet, under Section 101(5), a "claim" must be, or give rise to, a "right to payment."[28]

Just as an injunction that cannot be reduced to a "right under payment" is nondischargeable,[29] it is not a "claim" subject to estimation. The Court would "estimate" Epson's claim for past infringement only for voting and distribution purposes. Hence, Section 502(c) does <u>not</u> give Debtor a procedural vehicle to convert that Nevada District Court's Preliminary Injunction into a general unsecured claim. Along the same lines, Debtor incorrectly claims that "Epson seeks relief <u>only</u> to liquidate its claim."[30] Epson also seeks a permanent injunction and a destruction order (which Debtor acknowledges is not his issue).[31]

Further, although the Court need not, and should not, decide the issue now, if/when Debtor files his estimation motion, this Court may abstain under the

---

[27] Statutory citations are to the Bankruptcy Code (Title 11, U.S.C.), unless otherwise indicated.
[28] 11 U.S.C. § 101(5).
[29] <u>In re Chateaugay Corp.</u>, 944 F.2d 997, 1007-1008 (2d Cir. 1991) ("we must determine whether the injunctions, alleged to give rise to dischargeable 'claims,' impose a remedy for a performance breach that gives rise to a right of payment. … [¶] [I]f the order, no matter how phrased, requires [a defendant] to take any action that ends or ameliorates current pollution, such an order is not a 'claim.'").
[30] Opp., 14:4-5 (emphasis added).
[31] Motion to Dismiss RfJN, Ex. 2 (Second Amended Complaint).

- 8 -

*Colorado River* abstention doctrine.[32] Indeed, because Epson's claims arise under, among other things, federal non-bankruptcy law, abstention is mandatory[33] and transfer to the Nevada District Court likely. Why take the long way (estimation/withdrawal of the reference/transfer) around to get the same end point (the Nevada District Court hearing the matter that it has been hearing for two years) rather than the faster approach (relief from stay)?

### B. Epson Has Demonstrated "Cause" for Relief from the Automatic Stay to Complete the Infringement Action

Debtor then argues that Epson has failed to demonstrate "cause" for relief from the automatic stay under Section 362(d)(1). The parties start from the same point: This Court has discretion to grant such relief, and evaluates "cause" by considering a number of factors. Epson addresses the key Sonnax[34] factors on which the parties disagree:

<u>Factor No. 1 (Whether the relief will result in a complete or only a partial resolution of the issues)</u>: Debtor claims that relief will not result in a complete resolution because of potential contribution claims.[35] That, of course, ignores that Debtor's co-defendants' contribution claims will be disallowed (to avoid double

---

[32] In re Bellucci, 119 B.R. 763, 775-778 (Bankr. E.D. Cal. 1990).

[33] 28 U.S.C. § 157(d) ("The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and <u>other laws of the United States</u> regulating organizations or activities affecting interstate commerce" [emphasis added]); see, e.g., In re Imperial Bankcorp., Inc., 2012 WL 10710, at *2 (S.D. Cal. Jan. 3, 2012) ("If resolution of [federal] non-bankruptcy law [is] essential to the dispute," withdrawal of the reference is mandatory, quoting Holmes v. Grubman, 315 F.Supp.2d 1376, 1379 (M.D. Ga. 2004), and citing Security Farms v. Int'l Bd. of Teamsters, 124 F.3d 999, 1008 n. 4 (9th Cir. 1999). Debtor's argument, citing instead 28 U.S.C. § 1334(c)(2), that mandatory abstention applies only to state law claims (Opp., 17:14-22) is clearly erroneous.

[34] Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990).

[35] Opp., 16:3-13.

- 9 -

recovery on a single claim—Epson's claim)[36]—and will not be affected by the estimation process.

Factor No. 2 (Degree of connection or interference with the bankruptcy case): The parties agree that the infringement issues have a high degree of connection with ART's bankruptcy case, but disagree as to whether (A) that means there is a high degree of connection with Debtor's bankruptcy, when Debtor is primarily a real estate investor/advisor, and (B) even if there is a high degree of connection, that weighs in favor or against granting relief. Although normally, such connection might weigh against granting relief, here, it weighs in favor of granting relief. As noted above, Debtor's alternative to relief from stay is an estimation process, which will not eliminate the Preliminary Injunction. Hence, the fate of the Seized Products, which (1) are not Debtor's or ART's property, (2) were used to make counterfeits, and (3) are underwater, will not be addressed by the estimation process. Further, the estimation process and its appeals may take as long, or longer, than allowing the appeal in the Infringement Action to proceed.

Factor No. 5 (Whether the debtor's defense and potential liability is covered by insurance): Debtor has no applicable insurance, and complains about the potential costs of litigation—but proposes an approach that will require two proceedings: the Infringement Action and the estimation proceeding. Further, "the cost of defending litigation, by itself, has not been regarded as constituting 'great prejudice,' precluding relief from the automatic stay."[37]

Factor No. 6 (Whether the action involves primarily third parties): There are 17 other defendants in the Infringement Action. Debtor claims that necessarily means that the Infringement Action "primarily" involves the third

---

[36] 11 U.S.C. § 502(e).
[37] In re Anton, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992) (emphasis added), quoting In re Unioil, 54 B.R. 192, 195 (Bankr. D. Colo. 1985).

- 10 -

parties.³⁸ That quantitative approach to a qualitative issue is misguided: Debtor and ART also were (and are) key and active wrongdoers.

Factor No. 7 (Whether the case would prejudice other creditors' interests): Debtor's dilution argument assumes that the estimation process would result in a different claim amount; yet, the estimated claim may be higher or lower than a judgment in the Infringement Action. The point of the estimation process is to speed up the process, not change the result.

Factor No. 10 (The interests of judicial economy and the expeditious and economical resolution of litigation): Debtor argues that until the trial has been held and judgment entered, this factor can never weigh in favor of relief. Hogwash. Relief to complete litigation is often sought and granted when a case in on the eve of trial or entry of judgment. That is what we have here: The Nevada District Court granted Epson's Motion for Default Judgment; Debtor's bankruptcy beat entry of the written judgment.

Debtor dismisses Epson's citation of In re Castlerock Properties,³⁹ in which the Ninth Circuit held that when the lawsuit involves exclusively questions of state law or much of the litigation has already taken place, the bankruptcy court should lift the stay to let the non-bankruptcy action proceed to judgment.⁴⁰ Debtor notes, correctly, that the Infringement Action is based on federal law. Yet, the Castlerock Properties' disjunctive test of substantial litigation having occurred is fulfilled: The Infringement Action is on the verge of entry of judgment.

Debtor also dismisses Epson's citation of In re Deep.⁴¹ Yet, in Deep, the bankruptcy court granted an IP owner relief from the stay to compel an

---

³⁸ Opp., 18:25-28.
³⁹ In re Castlerock Properties, 781 F.2d 159, 163 (9th Cir. 1986).
⁴⁰ Id. at 163; see also In re Tucson Estates, Inc., 912 F.2d 1162, 1169 (9th Cir. 1990).
⁴¹ In re Deep, 279 B.R. 653 (N.D.N.Y. 2002).

- 11 -

infringement action, even though only 2 of the 12 Sonnax factors favoring granting relief.[42]

Judicial economy is <u>the</u> key factor that bankruptcy courts consider when they rule on motions for relief from the automatic stay.[43] Judicial economy dictates granting relief when the litigation has already been litigated extensively.[44] Likewise, judicial economy (among other factors) favors relief when litigating the issues in the bankruptcy court would result in duplicate expenditures and the district court would have to revisit the issues again anyway.[45] Indeed, because Epson's claims are mostly based on federal nonbankruptcy law (trademark law), mandatory abstention will be at play.[46] For the reasons discussed above, this factor weighs heavily in favor of granting relief.

<u>Factor No. 11 (Whether the parties are ready for trial)</u>: Debtor argues that the Infringement Action is not ready for trial—when Debtor has no right to a trial due to his default. In any event, the Infringement Action is further along than merely being "ready for trial;" the Nevada District Court was about to enter judgment when Debtor filed for bankruptcy (and discovery had long been closed[47]).

Hence, there is "cause" to grant Epson relief from the automatic stay to complete the Infringement Action, including Debtor's Appeal.

---

[42] In re Deep, 279 B.R. at 657-660; accord In re SCO Group, Inc., 395 B.R. 852, 854-860 (Bankr. D. Del. 2007) (granting relief from the automatic stay to complete a years-old copyright infringement case on the eve of trial); In re Consolidated Distributors, Inc., 2013 WL 3929851, at *9-12 (Bankr. E.D.N.Y. 2013) (granting relief from the stay to allow trademark action to proceed).
[43] See Piombo Corp. v. Castlerock Prop. (In re Castlerock Prop.), 781 F.2d 159, 163 (9th Cir. 1986).
[44] In re Neal, 176 B.R. 30, 33-34 (Bankr. D. Id. 1994).
[45] See Santa Clara County Fair Ass'n v. Sanders (In re Santa Clara County Fair Ass'n), 180 B.R. 564, 566 (9th Cir. B.A.P. 1995).
[46] See footnote 33 supra.
[47] Reply Declaration of Annie S. Wang, ¶ 27.

C. The Stay Should be Annulled, Retroactive to the Nevada District Court's Entry of the Default Judgment

In one last ditch effort to delay things, Debtor argues that even if this Court grants Epson relief to complete the Infringement Action, the Court should not annul the stay as of entry of the Default Judgment. In its moving Memorandum of Law, Epson went through the Ninth Circuit Bankruptcy Appellate Panel's list of factors for ruling on such a request;[48] in his Opposition, Debtor goes through that list, and not surprisingly, reaches the opposite conclusion that Epson reaches. But in this case, at least, the analysis is fairly simple:

(A) If the Court grants Epson relief, but <u>not</u> retroactively,

    (i) Debtor's Appeal must be dismissed as void; and

    (ii) The Nevada District Court must re-enter the Default Judgment;

    (iii) Debtor must file a new notice of appeal; and

    (iv) Debtor must prosecute that appeal.

(B) If the Court grants Epson relief, and <u>does</u> makes such relief retroactive, Debtor continues with his existing appeal, eliminating steps (i) through (iii) above.

If the key factor for relief from stay in the nonbankruptcy litigation setting is judicial and party economy/efficiency, clearly the relief should be retroactive.

## IV. **CONCLUSION**

For the foregoing reasons, Epson requests that the Court grant Epson—and Debtor—relief from the automatic stay to permit resolution of the Infringement Action, including Debtor's Appeal. Further, Epson requests that (A) such relief be retroactive to entry of the Default Judgment, and (B) enforcement of the <u>monetary</u> provisions of the judgment by stayed, but not the <u>non-monetary</u>

---

[48] Epson's Memorandum of Law [Dkt. 73], 13:1-15:5.

- 13 -

In re Koshkalda, Reply Memo. of Law i/s/o Motion for Relief from Automatic Stay

Case: 18-30016    Doc# 72    Filed: 03/02/18    Entered: 03/02/18 14:07:49    Page 16 of 17

provisions, such as destruction of the illegal Seized Products, the permanent injunction, and exoneration of the bond Epson posted.

DATED: March 2, 2018        THE DAVID FIRM®

By:   /s/ *Henry S. David*
      Henry S. David
      Attorneys for Creditors
      Seiko Epson Corporation
      and Epson America, Inc.