Gregory A. Rougeau (194437)
BRUNETTI ROUGEAU LLP
235 Montgomery Street, Suite 410
San Francisco, California 94104
Telephone: (415) 992-8940
Facsimile: (415) 992-8915
E-mail: grougeau@brlawsf.com

Counsel for ARTEM KOSHKALDA
Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ARTEM KOSHKALDA,<br><br>Debtor. | Case No. 18-30016-HLB<br><br>Chapter 7<br><br>**DECLARATION OF ARTEM KOSHKALDA IN SUPPORT OF DEBTOR'S OPPOSITION TO DEBTOR'S OPPOSITION TO ENTRY OF STIPULATION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Hearing:<br>Date: May 10, 2018<br>Time: 1:00 p.m.<br>Place: Courtroom 19<br>       450 Golden Gate Avenue<br>       San Francisco, CA 94102<br>Judge: Hon. Hannah L. Blumenstiel |

I, Artem Koshkalda, declare:

1. I am the debtor herein, and am also the managing member of ART, LLC ("ART"), debtor and debtor-in-possession in Chapter 11 Case No. 18-30014.

2. I make this declaration in support of the Opposition (the "Opposition") to the "Stipulation Among Seiko Epson Corporation, Epson America, Inc., And Chapter 7 Trustee Re Epson's Motion For Relief From Automatic Stay" (the "Stipulation") filed in this case.

3. As to the facts in this declaration, I know them to be true of my own knowledge or have obtained knowledge of them from my review of the business records of the Debtor concerning this matter. If called upon to testify as to the matters set forth in this declaration, I could and would competently testify thereto. As to those matters stated in this declaration on information and belief, I believe them to be true.

4. I am a real estate investor, and, through ART, was in the business of marketing and selling office products and supplies. I am the sole member and was the manager of ART, which was formed in or around February of 2012 and began selling computer printers as its primary business, and, to a lesser extent, ink cartridges and beauty products. Epson ink cartridges were a small percentage of the company's sales, as its primary business line was printers and it sold, in addition to Epson, ink cartridges for HP, Brother, Canon, and Lexmark printers.

5. ART bought genuine Epson cartridges for a low price abroad and sold them domestically at a higher price, but a price that was lower than what Epson was charging its own customers. This was possible because Epson's pricing model discriminates between its U.S.-based customers and its international customers. Epson sells printers in the United States at a low price but sells their ink cartridges at a steep price. In Asia, Epson sells printers at a steep price, but prices its ink cartridges inexpensively. There is no difference in the ink or the printers – so any sophisticated consumer would buy ink abroad and printers domestically. Epson forces its customers to pay higher prices by designing its U.S-sold printers to require a chip that it inserts in its U.S.-sold ink cartridges which is incompatible with the chips in cartridges it sells abroad.

Case: 18-30016    Doc# 119    Filed: 05/08/18    Entered: 05/08/18 16:59:50    Page 2 of 5
DECLARATION

6. ART began purchasing genuine Epson ink cartridges from suppliers in China and elsewhere, importing them into the U.S., and then selling them to its customers. These were bought in bulk, with the cartridges still in their original vacuum-sealed bags. Among its customers were InkSystem and Lucky Print. In addition to selling them genuine Epson ink cartridges bought in China, ART also sold InkSystem and Lucky Print a chip that could be inserted into the cartridges bought in China so that they would work in Epson printers sold in the U.S. ART never sold Epson cartridges in an altered state, nor did it ever place, or alter, an Epson trademark on the cartridges.

7. Certain inventory belonging to ART has been seized by Epson in the Infringement Action (*Seiko Epson Corporation et al. v. InkSystem LLC et al., Case No. 3:16-cv-00524- RJC-VPC* in the United States District Court for the District of Nevada, Reno Division (the "Nevada District Court")), pursuant to a Temporary Restraining Order, Preliminary Injunction, and related orders (the "Seizure Order") [Dkt. 9 in the Infringement Action].

8. To the best of my knowledge, information and belief, all ink cartridges seized by Epson (the "Seized Product") on or about October 26, 2016, (the "Seizure Date") from the location 960 Matley Lane, Units 12 and 29, Reno, NV 89502 ("Matley Lane") are the inventory fully owned by ART.

9. The Seizure Order permitted Epson to seize cartridges that are "counterfeit ink cartridges bearing unauthorized reproductions of registered trademarks owned by Plaintiffs [Epson] ("Unauthorized Products") (Seizure Order, page 2, lines 6-7) and that "Plaintiffs' [Epson's] agent shall promptly inspect all items seized and, if any items are found not to be items authorized for seizure by this Order, such items are to be returned to Defendants within THREE (3) business days after the date of such seizure pursuant to the terms of this Order." (Seizure Order, page 6, lines 18-21).

10. I am informed and believe, based on Epson's filing in this case, that among the items Epson seized on October 26, 2016 were "opened genuine cartridges (which is the same as infringing products), and unopened foreign and other cartridges. (See Reply, filed by Epson in the ART, LLC case, Docket 97, page 4 of 18, lines 25-28).

2
DECLARATION

11. Neither "opened genuine cartridges," nor "unopened foreign and other cartridges" are "counterfeit ink cartridges bearing unauthorized reproductions of registered trademarks owned by Epson" that were permitted to be seized by Epson according to the Seizure Order. None of that inventory has been returned to ART, in violation of the Seizure Order.

12. Further, following the seizures of inventory from ART and other defendants in the Infringement Action, I have never received any receipts or proper inventory of the results of the seizures, nor have I ever received any details regarding how Epson or its "retained specialists" determined that ART's seized inventory is counterfeit or infringing. As a result of severe financial hardship imposed by various seizure orders entered in the Infringement Action, I have never been afforded the opportunity to inspect the seized inventory, to determine whether Epson has complied with its obligations with regard to tagging, identification, etc.

13. I am informed and believe that Mariia Kravchuk, who is submitting a separate declaration in connection with the Stipulation in the ART LLC Chapter 7, is willing and able to cover all costs of the inspection of the Seized Product, as part of a purchase of any genuine ink cartridges that should never have been seized by Epson in the first place. Inspection of the inventory is critical to my estate, and to that of ART: it will enable the estates to determine whether Epson should be permitted $12,000,000 claims, it will enable the estates to pursue an appeal of the default in the Infringement Action, it may validate a claim for the bond that Epson was required to post in the event it seized non-infringing product, and may support a claim of damages against Epson, following an appeal. Further, preservation of the evidence of what Epson seized is necessary to litigate Epson's recently commenced adversary proceeding against me, individually, for nondischargeabilty.

DECLARATION

1    I declare under penalty of perjury under the laws of the United States of America that
2 the foregoing is true and correct.  This declaration was executed on May 8, 2018 at San
3 Francisco, California.

                                          */s/ Artem Koshkalda*
                                          Artem Koshkalda

DECLARATION