1  MICHAEL A. SWEET (SBN 184345)
   msweet@foxrothschild.com
2  JACK PRAETZELLIS (SBN 267765)
   jpraetzellis@foxrothschild.com
3  **FOX ROTHSCHILD LLP**
   345 California Street, Suite 2200
4  San Francisco, California 94104
   Telephone:  (415) 364-5540
5  Facsimile:  (415) 391-4436

6  Attorneys for E. Lynn
   Schoenmann, Trustee
7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

| In re: | Case No. 18-30016-HLB |
|---|---|
| ARTEM KOSHKALDA, | Chapter 7 |
| Debtor. | **TRUSTEE'S REPLY MEMORANDUM IN SUPPORT OF APPLICATION FOR BANKRUPTCY RULE 2004 EXAMINATION OF CERTAIN LAW FIRMS, MARIIA KRAVCHUK AND VARIOUS BANKS FOR PRODUCTION OF DOCUMENTS RELATED TO THE PAYMENT OF DEBTOR'S LEGAL FEES** |
| | Date: August 30, 2018<br>Time: 10:00 a.m.<br>Location: United States Bankruptcy Court<br>450 Golden Gate Avenue<br>16th Floor, Courtroom 19<br>San Francisco, California<br>Judge: Hon. Hannah L. Blumenstiel |

The Opposition Papers[1] – in mass – ignore the evidence submitted by the Trustee in support of the 2004 Application. Reading the Opposition briefs alone, one might think the basis for Trustee's request is spun from whole cloth. A complete conspiracy theory invented to for the sole purpose of burdening the Debtor's lawyers. That is far from the case.

---

[1] Brunetti Rougeau [Doc. #292], Jeffer Mangels Butler & Mitchell [Doc. #228], Rimon [Doc. #297], and Reallaw [Doc. #291] filed Opposition. Law Offices of Alex Gortinsky, Wells Fargo Bank, Mariia Kravchuk, and AIIRAM did not.

# I. ARGUMENT

A. Direct And Circumstantial Evidence Supports Issuance of The Requested Order

*What do we know?*

1. We know that in connection with the prospective purchase of a condominium, the Debtor submitted a bank statement from Privat Bank (a Ukrainian bank) showing an account in his name balance of $1.7 million as of November 3, 2016. [Doc. #262-5.] (We know this because the condominium seller gave this document to Epson as part of a document production).

2. We know the Debtor has repeatedly denied any knowledge of the Privat Bank statement. And has no explanation for why it was part of the set of materials he submitted in connection with the condominium purchase contract. [Doc. #262-4 at 5, 6, and 7.]

In light of these two facts it is wholly reasonable for the Trustee to seek further information that would shed light on whether the Debtor has a foreign bank account that he has hidden – and continues to hide – from the Trustee. This is not an investigation based on rank speculation. Indeed, direct evidence – the Privat Bank statement – tends to support the conclusion that the Debtor may have one or more off-shore accounts with significant sums that should be made available to the Estate's creditors.

*What else do we know?*

3. We know Mariia Kravchuk[2] – ostensibly a Ukrainian possibly living now in either Kiev or Moscow – "loaned" hundreds of thousands of dollars to the Debtor to fund his legal battles through her limited liability company AIIRAM. [Doc. #262-3 at 3.]

4. We know that Kravchuk's loans to the Debtor have none of the hallmarks of a standard commercial loan. More to the point: at his 2004 Examination the Debtor provided no (useful) information whatsoever regarding Kravchuk's loan to him. [Doc. #262-3 at 4, 5, 6, and 7; Doc. #262-4 at 2, 3, and 4.]

///

---

[2] Kravchuk recently failed to file an answer in response to the Trustee's adversary complaint against her and a clerk's default has been entered against her. [Adv. Proc. No. 18-03030 at Doc. #23.]

Altogether, these facts (the missing money and the enormous, abnormal, and unexplained loans from Kravchuk) suggest that perhaps the money purportedly coming from Kravchuk is, in fact, the Debtor's pre-petition property which had been entrusted with Kravchuk for "safe keeping." In which case it would be possible that she is the Debtor's conduit to the hidden Privat Bank account.

*And what does this have to do with the Law Firms and their financial records?*

The Law Firms have records that may assist the Trustee in her investigation. Specifically, their records may allow the Trustee to "follow the money." For example, since Kravchuk purportedly paid the Law Firms either directly or through her entity AIIRAM (that's "Mariia" spelled backwards), once the Trustee has the Law Firm records she should be able to determine whether the funds came directly from the Privat Bank account. Or if the funds did not come directly from the Privat Bank account, the records will provide additional information about accounts that would allow the Trustee to continue to trace the funds.

The whole point of this investigation is to determine whether or not Kravchuk's money "loaned" to the Debtor in fact originated from the Privat Bank account or some other repository of personal funds that the Debtor set up in the US or off-shore before filing his bankruptcy petition. Of course, the Trustee acknowledges that it is possible that with the information that the Law Firms provide in response to this 2004 Examination she may conclude that the funds that Kravchuk used to pay Koshkalda's attorneys were not Estate funds. But, until the Trustee is able to sort out the circumstances surrounding these payments, the investigation remains incomplete.

*Where does the correspondence relating to payment of the Debtor's legal fees fit into this?*

During his 2004 Examination, the Debtor gave the Trustee no information whatsoever about his arrangement with Kravchuk. [*See, e.g.*, Doc. #262-3 at 4 (in response to "what's the whole arrangement" with Kravchuk about payment of his legal fees? Koshkalda testified, "I don't remember, Mr. Sweet, at the moment.")] Evidence demonstrating this testimony was intentionally false is relevant to the Trustee's possible non-dischargeability action against the Debtor.

Email traffic, or other correspondence relating to the payment of the Debtor's legal fees may reveal details about the arrangement between the Debtor and Kravchuk. Or it may simply show that Kravchuk is spending Estate assets for Koshkalda's benefit. Either way, the information is relevant

to the Trustee's investigation, and is certainly a proper subject of discovery. But with Kravchuk refusing to respond to multiple overtures from the Trustee to open a line of communication, and with the (naturally self-interested) Debtor unable to provide credible explanations about the sources of funds, the arrangement with Kravchuk, or how a bank statement in his name showing $1.7 million was provided to a developer as apparent proof of availability of funds for a condominium purchase, the Trustee must look for other sources of information to perform her investigation. In this case the best available information to assist the Trustee is the Law Firms which, by the Debtor's admission (exclusive of Reallaw), received fees from Kravchuk's entity.

### B. The Oppositions Fail To Demonstrate The Discovery Is Without Good Cause

Jeffer Mangels Butler & Mitchell ("JMBM") [Doc. #228]: JMBM argues 1) it already disclosed the source of payments to it, 2) Kravchuk and the Debtor "testified" to the source of the payments, and 3) the Trustee has "alternative means" to obtain this information.

JMBM's "disclosure" does not provide the Trustee with JMBM's communication with Kravchuk nor does it provide the Trustee with the account numbers from which Kravchuk's money originated. And, the fact that the Trustee waited until now to examine JMBM (rather than doing so earlier) is irrelevant. Contrary to JMBM's implication, the Trustee had no obligation to object or respond to JMBM's disclosures. [See Doc. #288 at 4:18-25.] Indeed, the Trustee only sought this information from the law firms *after* the Debtor failed to provide details about his arrangement with Kravchuk during his 2004 Examination.

Furthermore, the Trustee has no way to get behind Kravchuk's declaration (she just defaulted in the Trustee's adversary proceeding against her). Simply put, Kravchuk's declaration is no basis for JMBM to avoid producing records. The Trustee rejects JMBM's implication that the Debtor's declaration on this point is reliable and should not be questioned. [See Doc. #288 at 4:11-17.] Finally, the Trustee cannot subpoena banks for accounts that she is unaware of. The Trustee's theory is that Kravchuk is funneling the Privat Bank account funds to the Debtor. The Trustee will use the bank records provided by JMBM to identify Kravchuk's account and use that account information to conduct further discovery.

///

Brunetti Rougeau ("BR") [Doc. #292] and Rimon [Doc. #297]: BR and Rimon largely make the same arguments as JMBM. Their oppositions should be overruled for the reasons stated above.

Reallaw [Doc. #291]: Reallaw is the firm that – without authority – filed the Debtor's wrongful seizure action in the Central District of California against Epson. Reallaw's Opposition raises many of the same arguments as the other firms. It is notable that at the same time Reallaw asserts that it has no financial records because it took the wrongful seizure case on contingency [see Doc. #291 at 12:9-18], it argues that "The Burden On Reallaw Is Disproportionate To The Trustee's Need" [see *id.* at 11:10]. If Reallaw has no financial records, then it has no financial records to produce (because they never existed).

The Trustee does not relish seeking records from the Debtor's attorneys. But, the Trustee has no way of investigating the source of the Debtor's litigation financing – i.e., Kravchuk – other than via the Debtor's current and former attorneys. And the direct and circumstantial evidence elicited thus far justifies such an investigation.

## II. TRUSTEE'S MEET AND CONFER EFFORTS

The Trustee anticipated engaging in meet and confer efforts over the scope of the production required after issuance of a 2004 Order permitting the Trustee to serve a subpoena for production of documents on each target of the 2004.

None of the objecting parties met and conferred with the Trustee prior to filing opposition papers. To address the concerns raised in the Opposition briefs, the Trustee wrote to the objecting parties suggesting 1) the scope of the production of communication in Category 2 could be limited to communication with Mariia Kravchuk (or any agent of hers), and 2) irrelevant financial information (i.e., information that does not related to the Debtor, any of his LLCs, Mariia Kravchuk, or AIIRAM) can be redacted from any financial production.

Only Rimon responded to the Trustee's meet and confer efforts. Rimon suggested that it might be willing to produce certain documents subject to certain assurances from the Trustee in connection with its production. The parties are continuing to meet and confer in an attempt to come to an agreed resolution and hope to present a stipulation to the Court in advance of the hearing.

///

1    The Trustee remains open to working with the other Law Firms to reach a resolution of
2    issues prior to the hearing.

### III. CONCLUSION

The Trustee respectfully request the Court overrule the objections and issue the 2004 Order. Meanwhile, the Trustee remains willing to meet and confer with any objecting party in order to resolve any opposition or potentially narrow the issues for the Court to decide in this Application.

Dated:  August 23, 2018

FOX ROTHSCHILD LLP`

By */s/ Michael A. Sweet*
   Michael A. Sweet
   Attorneys for Trustee E. Lynn Schoenmann