Artem Koshkalda
3408 Chitgar Place,
San Jose, CA, 95117
*artemkoshkalda@gmail.com*

*Pro Se*

**FILED**

DEC 09 2019 ᴍᴛ

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No. 18-30016-HLB |
| ARTEM KOSHKALDA, | Chapter 7 |
| Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES ISO KOSHKALDA'S MOTION FOR LEAVE OF COURT AND TRUSTEE'S REMOVAL** |
| | Date:    January 9, 2020 |
| | Time:    10:00 a.m. |
| | Place:    Courtroom 19 |
| |            450 Golden Gate Avenue |
| |            San Francisco, CA 94102 |
| | Judge:    Hon. Hannah L. Blumenstiel |

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 1 of 23

# TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................**4**

**SUMMARY OF FACTS** .........................................................................................**6**

**LEGAL ARGUMENTS** ........................................................................................**17**

   A.   LEAVE OF COURT .................................................................................17

      *1.   Legal standard.* ...............................................................................*17*

      *2.   Application.* .....................................................................................*18*

   B.   REMOVE THE TRUSTEE ........................................................................22

      *1.   Legal standard.* ...............................................................................*22*

      *2.   Application.* .....................................................................................*23*

**CONCLUSION** .....................................................................................................**23**

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 2 of 23

CASES

Artem Koshkalda etc. v. Seiko Epson Corp. et al., Case No. 2:18-cv-0527-FMO-AGR ----------- 19

Barton v. Barbour, 104 U.S. 126 (1881) ------------------------------------------------ 17

Beck v. Fort James Corp. (In re Crown Vantage, Inc.), 421 F.3d 963, 967 (9th Cir. 2005 --------- 17

Blixseth v. Brown, 470 B.R. 562, 564 (D. Mont. 2012) ---------------------------------- 17

Brooks v. United States, 127 F.3d 1192, 1193 (9th Cir. 1997) ---------------------------- 22

Curry v. Castillo (In re Castillo), 248 B.R. 153, 160 (B.A.P. 9th Cir. 2000) -------------------- 19, 20

Dye v. Brown (In re AFI Holding, Inc.), 355 B.R. 139, 148 (B.A.P. 9th Cir. 2006) ---------------- 23

Kashani v. Fulton (In re Kashani), 190 B.R. 875, 878 (B.A.P. 9th Cir. 1995) ----------------------- 17

Krasnoff v. Marshack (In re Gen. Carriers Corp.), 258 B.R. 181, 184 (B.A.P. 9th Cir. 2001) ---- 17

STATUTES

11 U.S.C. § 723 ---------------------------------------------------------------- 20

11 U.S.C. § 324 ---------------------------------------------------------------- 22

28 U.S.C. § 1334 --------------------------------------------------------------- 17

28 U.S.C. § 157 ---------------------------------------------------------------- 17

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Koshkalda[1] sought bankruptcy protection for himself and his creditors due to a looming default judgment in favor of the Epson[2] based on *erroneously* entered case terminating sanctions against jointly and severally liable Koshkalda and other about 16 defendants in the NV Action which has ***never been resolved on the merits.***[3] Koshkalda petitioned to Chapter 11 reorganization. On January 16, 2018, a default judgment against Koshkalda and ART LLC[4] was entered by the NV District Court in violation of the bankruptcy stay despite at least three notifications sent to the NV District Court. On March 8, 2018, the Bankruptcy Court[5] converted the case to Chapter 7 liquidation, — E. Lynn Schoenmann was appointed as a Chapter 7 Trustee.[6]

As counsel for the Koshkalda's Estate the Trustee proposed to employ the Fox[7] — the lawyers the Epson is known to use on a day-to-day basis in many other matters.[8] The Bankruptcy Court approved the employment of the Fox[9] *erroneously* concluding that the Fox is a disinterested party and does not hold an interest against the interest of the Koshkalda's Estate which contradicts controlling decisions of the BAP.[10] All claims the Koshkalda's Estate holds against the Epson

---

[1]  ARTEM KOSHKALDA (the "Debtor" or "Koshkalda") petitioned for bankruptcy personally [Case No. 3:18-bk-30016], and also as a sole owner of ART LLC which is in the separate bankruptcy proceeding [Case No. 3:18-bk-30014]; Estate in the case No. 3:18-bk-30016 — (the "Koshkalda's Estate"); Estate in the case No. 3:18-bk-30014 — (the "ART LLC's Estate");

[2]  Seiko Epson Corporation and the Epson America Incorporated (collectively, the "Epson");

[3]  Case No. 3:2016-cv-00524 — (the "NV Action");

[4]  ART LLC — solely owned company by Koshkalda;

[5]  United States Bankruptcy Court for the Northern District of California San Francisco Division — (the "Bankruptcy Court");

[6]  Order Converting Case to Chapter 7. Trustee E. Lynn Schoenmann assigned to the case — Dkt. 76; Trustee in the case No. 3:18-bk-30016 — (the "Trustee");

[7]  Fox Rothschild LLP — (the "Fox");

[8]  Application to Employ Fox Rothschild LLP as Counsel — Dkt. 79;

[9]  Order Authorizing Employment Of Counsel — Dkt. 87; Decl. of Michael Sweet attesting that Fox Rothschild LLP shares attorney-client relationship with the Epson — Dkt. 79-1, ¶5-b;

[10]  Bankruptcy Appellate Panel — (the "BAP"); "[L]aw firm could not have simultaneously represented clients with adverse interests, even on unrelated matters." See Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis), 347 B.R. 679 (B.A.P. 9th Cir. 2006); The bankruptcy court does not have authority to allow employment of a professional in violation

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 4 of 23

became under control of the Fox — the Epson's lawyers — that owes a duty of loyalty to the Epson. While not being disinterested the Fox did not question anything the Epson was alleging against Koshkalda and acted *rather as the Epson's lawyers, than the Trustee's ones.* During the September 13, 2018, hearing the Fox admitted that the Trustee was using a "hands-off" approach.[11] Utilizing the power of the Trustee and following the Epson's orders the Fox was looking for alleged by the Epson hidden by Koshkalda millions of dollars while the Trustee completely neglected her primary duty of care to all assets passed by Koshkalda to the Koshkalda's Estate. *That way all of the work was done by the Fox, and the Trustee's participation.*

The Trustee's "hands-off" approach and all the work done by the Fox resulted in the payment from the Koshkalda's Estate of $1,056,351.20 to the Trustee and her professionals while there is only about $258,000 left in the Koshkalda's Estate for distribution among the creditors. The Trustee herself was paid about $190,000 while spending a total of 131 hours which makes it *an hourly rate of about $1,445* — possibly making more per hour than the presiding Judge and all of the Judges in the Bankruptcy Appellate Panel combined.

*While the Trustee used a "hands-off" approach the Fox representing the Koshkalda's Estate assisted its client — the Epson — in the following:*

(1)    liquidation of the Epson's previously unliquidated claim against the Koshkalda's Estate for the <u>full amount</u> of twelve million dollars which was entered against total of 17 defendants in the case with a default judgment based on case terminating sanctions;[12]

(2)    receive permission for destruction of the evidence in the NV Action not resolved on merits;

(3)    dismissal of the Appeal of the NV Action not resolved on merits;

---

of 11 U.S.C.S. § 327 or 11 U.S.C.S. § 101(14). In re Hammer, No. WW-06-1373 - MoDJ, 2007 Bankr. LEXIS 4819, at *1 (B.A.P. 9th Cir. Aug. 17, 2007).

[11]    Declaration of Artem Koshkalda in Support of Debtor's Motion to Disqualify Fox Rothschild LLP and For Disgorgement of Fees, — <u>Dkt</u>. 689, ¶14, and Exhibit 9 attached thereto — Transcript of the September 13, 2018, hearing, 6:6-7:3;

[12]    There was no even a slight attempt by the not disinterested Fox to do any negotiations with the Epson, which should have benefited the Koshkalda's Estate, — for example, to split the judgment evenly among all defendants which would have made the judgment to be about $700,000, — everything what the Epson was alleging was taken as a truth by the Fox;

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 5 of 23

(4)     having the Epson's claim to be declared as non-dischargeable;

(5)     concealing the Fox's communication with the Epson working adverse to Koshkalda;

(6)     dismissing with prejudice the Koshkalda's Estate's claims against the Epson at no cost for the Koshkalda's Estate;

(7)     draining the Koshkalda's Estate's resources to the point that even if Koshkalda prevails on appeal of the NV Action the Koshkalda's Estate will not have funds remaining in the Estate to prosecute all claims against the Epson for several "dozens" of million dollars;

(8)     doing everything possible to ensure that the claims of the Koshkalda's Estate against the Epson remain in the Epson's lawyers' — the Fox's — control and not abandoned to Koshkalda.

The Fox and the Epson succeeded in all above mentioned steps besides the dismissal of the Appeal of the NV Action. The Koshkalda's Estate has never been represented by a disinterested counsel.

### SUMMARY OF FACTS

As a result of the Trustee hiring a non-disinterested counsel the Epson and the Fox on behalf of the Trustee entered into a "joint defense strategy" against Koshkalda from day one of the Fox's employment.[13] On May 4, 2018, the Fox on behalf of the Trustee signed a stipulation with the Epson to get the Epson's claim against the Koshkalda's Estate liquidated in the amount of $12,000,000 against the Koshkalda's Estate, which was obtained based on case terminating sanctions and default judgment against about 15 other defendants and Koshkalda. In addition, with no benefit for the Koshkalda's Estate the Fox on behalf of the Trustee agreed to allow the Epson to destroy the evidence belonging to Koshkalda and seized from Koshkalda by the Epson during the NV Action.[14] On May 10, 2018, the Bankruptcy Court denied the Fox's request to approve such stipulation, stating among other things the following:

**THE COURT:**     *... The first is that, you know, the stipulation that I've been presented with and to which Mr. Koshkalda and ARTLLC have objected **does a lot more** than simply resolve the motion for relief from stay. It liquidates the claim, and it would appear to be aimed at foreclosing*

---

[13]     Koshkalda's Decl., ¶5;
[14]     Dkt. 117;

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016     Doc# 829     Filed: 12/09/19     Entered: 12/09/19 16:12:47     Page 6 of 23

*Mr. Koshkalda's and ARTLLC's ability to seek to prevent entry of an amended judgment in the State Court and his pursuit, should he wish to do so, of an appeal. ...*

*...I don't see any reason why the Trustees would be interested in asserting Mr. Koshkalda's and ARTLLC's rights in the State Court action, and I am wondering why whatever defenses or appellate rights the Debtors might have are not abandoned to the Debtors...*

*... The second area of concern has to do with the destruction of the allegedly infringing property ... that allegedly infringing property is destroyed, that would certainly impact his [Koshkalda's] ability to defend in any litigation on the merits in that situation. ...*

*... it's clear to me that the person who cares about this the most is Mr. Koshkalda ...* [15]

The next day after the stipulation was denied by the Court, on May 11, 2018, the Epson sent an email to the trustee of the Koshkalda's Estate represented by the Fox, and to the trustee of the ART LLC's Estate[16] represented by truly disinterested counsel. In that email the Epson requested both trustees to "live up" to their promises agreed in their stipulation despite the Bankruptcy Court's denial.[17] This is a vivid example of how differs the approach between "not disinterested" and "disinterested" counsels. The Trustee of the ART LLC's Estate rejected the Epson's demand to disobey the Bankruptcy Court's order.[18] The Fox's response has been concealed from Koshkalda by the Epson claiming "attorney work product" in pursuit of a "joint defense strategy" against Koshkalda. Koshkalda sought the Bankruptcy Court to compel the Epson to produce communication between the Fox and the Epson, but the Bankruptcy Court accepted the fact that all communication between the Epson and the Fox representing the interests of the Koshkalda's Estate should not be revealed.[19]

---

[15] Koshkalda's Decl., ¶9, and Exhibit 5 attached thereto — transcript of the May 10, 2018, hearing, 5:13-7:19, emphasis added;

[16] The Chapter 7 Trustee of ART LLC's Estate Janina M. Hoskins in case No. 3:2018-bk-30014 pending before the Bankruptcy Court;

[17] Declaration of Artem Koshkalda in Support of (RE: related document(s)397 Debtor's Motion to Remove Trustee) — Dkt. 400, ¶8-9; Dkt. 399-1, exhibit B;

[18] Koshkalda's Decl., ¶6, and Exhibit 3 and Exhibit 11 attached thereto; See Dkt. 447, p. 4:16-18; Koshkalda requests this Court to take a Judicial Notice of the following document in Case No. 18-30014-HLB, which is a First Interim Application for Compensation And Reimbursement Of Expenses By Counsel For Chapter 7 Trustee (Dentons US LLP), in pertinent part, Dkt. 163, p. 11:16-17. Kelly v. Johnston, 111 F.2d 613, 615 (9th Cir. 1940) ("a court may take judicial notice of its own records").

[19] Koshkalda's Decl., ¶7;

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 7 of 23

On May 16, 2018, in anticipation of a Koshkalda's not yet filed motion for abandonment of the rights for all claims and causes of action of the Koshkalda's Estate against Epson, which was suggested for Koshkalda's filing by the Bankruptcy Court, the Fox again sent an email to the Epson which revealed that in the question of abandonment of the Koshkalda's Estate's claims against Epson the Fox served the interests of the Epson adverse to the interest of the Koshkalda's Estate. Like most attorneys tend to forward to their clients all email communications in regards to the matter of their clients, here, the Fox sent an email to the Epson providing the report of what the Fox plans to do next on behalf of the Koshkalda's Estate as to the Koshkalda's Estate's claims against the Epson. The Fox indicated that the Bankruptcy Court would no doubt rule against it, but regardless of the odds and for the cost of the Koshkalda's Estate with no even possible monetary return the Fox would try to find a viable ground for the Trustee to oppose.

*We have no doubt that Koshkalda will move for abandonment of the litigation claims pending in the district court in Reno. We will consider whether the Trustee can find viable grounds for opposing the abandonment. However, we think that whatever we say the Court is going to grant an abandonment on some terms or other. We will seek to have a combination outcome in the Koshkalda case – relief from stay for Epson, avoiding annulment; abandonment of claims to the Debtor but require dismissal of the pending Koshkalda appeal, permit entry of a new judgment with appropriately limited scope, and preserve the right to take a new appeal from that judgment.[20]*

It is a clear example that the Fox puts themselves as a separate unit from the Trustee and rather act as the Epson's lawyers and not as the Koshkalda's Estate's ones: "*We will consider whether the Trustee can find viable grounds for opposing the abandonment.*"

On May 21, 2018, Koshkalda filed a Motion to compel the Trustee to abandon to Koshkalda all rights for all claims and causes of action the Koshkalda's Estate held [and still holds] against the Epson.[21] Similar Motion was filed in the bankruptcy case of ART LLC.[22] The trustee of the ART LLC's Estate while being represented by a truly disinterested counsel agreed for abandonment and an order was entered by the Bankruptcy Court on June 6, 2018.[23]

---

[20]   Koshkalda's Decl., ¶8, and Exhibit 4 attached thereto;
[21]   Dkt. 125;
[22]   Case No. 18-30014, Dkt. 131;
[23]   Case No. 18-30014, Dkt. 137;

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016   Doc# 829   Filed: 12/09/19   Entered: 12/09/19 16:12:47   Page 8 of 23

After the abandonment from the ART LLC's Estate of all rights for all claims and causes of action against the Epson, and before the Bankruptcy Court made its ruling on the Koshkalda's Motion for abandonment from the Koshkalda's Estate of all rights and causes of action against the Epson Koshkalda filed a Wrongful Seizure Action against the Epson.[24]

The Bankruptcy Court ruled that the abandonment from the ART LLC's Estate went to Koshkalda, but because Koshkalda was in a bankruptcy himself the abandonment was done from the ART LLC's Estate to the Koshkalda's Estate, thus the Trustee, not Koshkalda, was a true party in the recently commenced the Wrongful Seizure Action against the Epson. The Bankruptcy Court also stated that it was not ready to abandon to Koshkalda anything more than the right for Appeal of the NV Action as of that moment.

**_THE COURT:_** *... this motion, as I read it, seems to go much further than that. It seems to demand that Ms. Schoenmann be compelled to abandon any and all other claims and causes of action that this bankruptcy estate might have against Seiko Epson, and I'm not willing to go that far.*

*And this brings us to a conversation about the complaint that was filed in the Central District of California. Ostensibly, that complaint was filed by Mr. Koshkalda as assignee of the rights of or claims belonging to ART, LLC. And I understand that the ART, LLC Chapter 7 Trustee has abandoned that estate's claims. But that abandonment, as I see it, transferred ART, LLC's claims to, right, the owner of ART, LLC. And currently the owner of ART, LLC, Mr. Koshkalda, is himself in bankruptcy. So that means that those rights to the extent they flowed from ART, LLC to Mr. Koshkalda are property of this bankruptcy estate. And I don't view that Mr. Koshkalda had any business filing that complaint.[25]*

In its order the Bankruptcy Court specifically authorized the Trustee to dismiss the Wrongful Seizure Action against the Epson.[26]

Through his counsel Koshkalda offered to the Trustee $60,000 for the abandonment of the rights to prosecute the Wrongful Seizure Action[27] with the purpose to remain the control of the claims Koshkalda's Estate held [and still holds] against the Epson. The Fox started to look for a "viable" ground to reject the Koshkalda's offer on behalf of the Trustee. The Fox sent a letter to the

---

[24]    Case No. 2:2018-cv-05087 (the "Wrongful Seizure Action");
[25]    Koshkalda's Decl., ¶3, and Exhibit 1 attached thereto, —transcript of the hearing held on June 28, 2018, 21:3-25;
[26]    Dkt. 190;
[27]    Koshkalda's Decl., — Dkt. 400, ¶4 and Dkt. 399-1, Exhibit D;

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 9 of 23

Epson which shows *a true nature of their real relationship* with the Epson and that the Fox indeed served its duty of loyalty to the Epson adverse to the Koshkalda'a Estate's interests. In its letter the Fox on its own initiative apologizes to the Epson that the Epson has a due date in the Wrongful Seizure Action for responses. The Fox on its own initiative drafted a stipulation so that the Epson would not miss its due date and explained to the Epson "*[w]ithout our [the Fox representing a plaintiff] proposed stipulation, you [defendants — Epson] would have to file an answer or responsive motion.*" In addition, the Fox also stated "*We [the Fox] are trying to help you [Epson] ... but the Trustee cannot go further than that at this juncture.*" ***Whose side is the Fox playing on?*** Why is it there in one sentence: *"we help you BUT the Trustee...,"* — it makes it obvious that the Fox is on the Epson's side adverse to the Trustee while representing the Trustee. The NV Action was not resolved on merits and the preservation of the inventory was very important for each side of the NV Action litigation. Finally, the Fox sought the Epson's understanding: "*I hope you [Epson] will understand our [the Fox's adverse to the Trustee's] situation, just as we are trying to be understanding of yours... .*"

> *After the hearing on June 28 and the Court's entry of order, circumstances have changed. Koshkalda - through Ben Young, not Hassen - has made an offer to the Trustee to purchase the claims asserted by Koshkalda in the C.D. Cal. lawsuit. The offer is for enough money that the Trustee believes that she has an obligation to bring it before the Bankruptcy Court, on a motion to sell the claims. She is agnostic on whether the claims have any merit whatsoever, but Koshkalda's offer means they are not valueless to the Koshkalda bankruptcy estate.*

> *The present stipulation is proposed to you as a way to avoid your having to rush around and file an answer on July 3, and also to provide time to discuss our views and yours on where things truly stand. I do not complain of this, only note it, but you did not call our attention to the deadlines you are facing in L.A. until today. Without our proposed stipulation, you would have to file an answer or responsive motion. We are trying to help you with that basic procedural/timing problem, but the Trustee cannot go further than that at this juncture.*

> *I hope you will understand our situation, just as we are trying to be understanding of yours. I urge you to accept the stipulation in the form enclosed here.[28]*

The Koshkalda's offer to the Koshkalda's Estate revealed the Fox's interest adverse to the Koshkalda's Estate even more. The Fox owed a duty of loyalty to the Epson and from another side — to the Trustee. The Fox again decided to look to find any viable ground not to accept the

---

[28]     Koshkalda's Decl., ¶4, and Exhibit 2 attached thereto;

Mop Iso Koshkalda's Motion For Leave

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 10 of 23

Koshkalda's offer and started to demand Koshkalda to reveal the source of the funds. Koshkalda informed that the funds will be borrowed from a third party and provided a declaration signed under the penalty of perjury attesting to the truthfulness of it and indicating the person the funds will be borrowed from. The Fox rejected the declaration by stating it was not good enough. In his second attempt to provide the necessary documents as proof of funds Koshkalda provided a declaration of the borrower attesting under the penalty of perjury and showing the consent to borrow the funds to Koshkalda upon the agreement for the abandonment and attesting that the funds are in the borrower's possession. The Fox again said it was not enough because the Fox could not verify the source of the funds. The Fox's excuses not to accept the Koshkalda's offers did not make sense and Koshkalda substituted his offer for $60,000 with an offer for abandonment in exchange for having all of the net proceeds from the result from the Wrongful Seizure Action against the Epson to go to the Koshkalda's Estate.[29]

The Fox did not respond, but, instead, on July 19, 2018, dismissed the Wrongful Seizure Action of the Koshkalda's Estate against the Epson *"with prejudice"* with no benefit for the Koshkalda's Estate.[30]

In the meantime, the Epson and the Fox keep withholding the emails between each other with a subject *"RE: [EXT] Dismissal of LA Action for wrongful seizure."* As it was stated above the Bankruptcy Court not just allowed the Fox while not being disinterested and holding an interest adverse to the Koshkalda's Estate to serve as counsel of the Koshkalda's Estate, but also denied the Koshkalda's attempt to reveal the communication between the Fox and the Epson.[31]

On July 31, 2018, the Fox filed Motion for 2004 Examination of Certain Law Firms, Mariia Kravchuk and Various Banks for Production of Documents Related to the Payment of Debtor's

---

[29]     Koshkalda's Decl., Dkt. 813, ¶10;
[30]     Koshkalda's Decl., Dkt. 813, ¶11, and Exhibit 6 attached thereto, which is a Dkt. 15 in Case No. 2:2018-cv-05087;
[31]     Koshkalda's Decl., Dkt. 813, ¶7; See Dkt. 447, p. 7:10-17; Dkt. 399-1, p. 3; Koshkalda requests this Court to take Judicial Notice of the following document in Case No. 18-ap-03020-HLB, which is Dkt. 105, p. 8:6-9:3. Kelly v. Johnston, 111 F.2d 613, 615 (9th Cir. 1940) ("a court may take judicial notice of its own records").

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Legal Fees. The Bankruptcy Court did not take it lightly stating that the Fox abused the due process rights of other parties, questioned what the Fox relied on in filing such papers, among other things specifically stating:

THE COURT: *All right. So we're going to talk about this Rule 2004 examination motion. It's filed ex parte. I set it for hearing because I immediately recognized the problems it would cause for the respondent law firms and because **I had issues with the breadth of the requests, including but not limited to the fact that it asked for permission to serve subpoenas on banks that were not identified.***

*Mr. Praetzellis, you've been in front of me a number of times. Did you draft this ex parte application or the document requests attached to it?*

MR. PRAETZELLIS: *Your Honor, my office did draft this. Yes, I —*

THE COURT: *Did you draft it is the question.*

MR. PRAETZELLIS: *In collaboration with Mr. Sweet, yes.*

THE COURT: *Okay. And you've been in front of me a number of times, right?*

MR. PRAETZELLIS: *That's correct, Your Honor.*

THE COURT: *Okay. What is my rule regarding discovery?*

MR. PRAETZELLIS: *Don't be greedy, don't be stingy.*

THE COURT: *Okay. Why on Earth do you think that I would permit discovery as to parties who are not identified?*

...

THE COURT: ***There's a concept called due process***, *Mr. Praetzellis. It requires that a party against whom relief is sought be given an adequate opportunity — adequate notice of the relief sought against it and an opportunity to respond to that. How do you think that subpoenaing — permitting discovery against banks who have not been advised of the trustee's request and have had no opportunity to respond to those requests satisfies the Constitutional protections of due process?*

...

THE COURT: *... For example, question number — or Category Number 2, "All nonprivileged correspondence or other communications with third parties relating to the debtor," I mean that's not limited to discovery aimed at determining who's been paying for legal fees. Right?*

MR. PRAETZELLIS: *That's correct, Your Honor.*

THE COURT: *Okay. So why is that in there?*

MR. PRAETZELLIS: *Well, Your Honor, —*

THE COURT: *Why was that drafted so broadly?*

...

THE COURT: *Why weren't those discussions had before something this provocative was ever filed?*

Case: 18-30016   Doc# 829   Filed: 12/09/19   Entered: 12/09/19 16:12:47   Page 12 of 23

...

*THE COURT:*         *I will tell you, Mr. Praetzellis, no single law firm makes for more unnecessary work and frustration for me than yours.*

...

*THE COURT:*         *And this is an example of why I feel that way.* ***This is over reaching. It's, frankly, ridiculous. And your firm should know better. And it's not the first time that I've made that comment to you in open court with your client present. And that message does not seem to have sunk in.***

....

*THE COURT:*         *And why is, you know, the trustee interested in communications relating to payment for legal services rendered on behalf of entities controlled by the debtor? Why is that appropriate? This trustee is not the trustee for those entities. She's the trustee for the debtor.*

...

*THE COURT:*         *And then there is the question of, again focusing on questions numbers — Categories Numbers 2 and 3, "Payment for legal services rendered by anyone," how is, for example, Mr. Young's law firm going to have documents related to services rendered by other law firms or other lawyers?*

...

*THE COURT:*         *I mean maybe the statement "rendered by anyone" would be appropriate for requests directed to Ms. Kravchuk or Aiiram, LLC,* ***but certainly not to a law firm.*** *I mean again it goes to the fact that these — these categories were not narrowly drafted enough. And there was, as you conceded, no effort to meet and confer with these law firms prior to the filing of this document.*

*MR. PRAETZELLIS:*         *That is correct, Your Honor. We did not meet and confer —*

*THE COURT:*         ***I mean that's just absurd. You have an obligation to meet and confer. I mean you don't just drop a hot potato like this in a law firm's lap and expect not to have a problem with it. I mean what did you think, that I was just going to grant that ex parte, that I don't read stuff? I mean I feel like you're trying to pull a fast one on me. And that's — I've had that feeling repeatedly in this case. It as if I don't fly-speck everything your firm files, there's going to be some sneaky thing slid under the door. I don't appreciate that, Mr. Praetzellis. I really don't. Your firm has absolutely no credibility with me whatsoever and I'm tired of it.[32]***

Right after finding out about the dismissal with prejudice, on August 2, 2018, Koshkalda filed a motion to compel the Trustee to abandon rights as to the Wrongful Seizure Action to Koshkalda.[33]

---

[32]     Koshkalda's Decl., ¶3, and EXHIBIT 1 attached thereto which is a transcript of the August 30, 2018, hearing, see 4:2-11:21;

[33]     Dkt. 270;

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 13 of 23

In two weeks, on September 13, 2018, during the hearing the Bankruptcy Court raised a concern of not understanding the reason the Wrongful Seizure Action was dismissed "with prejudice" and the reason the Fox opposed the Koshkalda's abandonment motion after having it dismissed "with prejudice." The following was stated:

*THE COURT:*     *.... I mean — and I also note that the Epson — neither the Epson nor the trustee opposed the prior motion [Koshkalda's request for abandonment of the right to litigate the Wrongful Seizure Action after it was dismissed with prejudice].*

*MR. ROUGEAU:*   *Not — not on the merits, no, Your Honor.*

*THE COURT:*     *Right. And they're opposing it now. And the trustee — I'm not sure why the trustee cares about this.*

*MR. SWEET:*     **The trustee doesn't care about this.** *The trustee thought that she had acted comporting with your — what you directed on June 28th. And if the Court would like things handled differently, the trustee is happy to accommodate to the extent that's necessary.*

*THE COURT:*     *You know I'm not criticizing the trustee for dismissing that Central District case. That was absolutely the right thing to do.* **But having dismissed that case with prejudice, doesn't that by implication mean that these claims have no value to this estate?**

*MR. SWEET:*     *Yes.*

*THE COURT:*     *So why does the trustee oppose this motion?*

*MR. SWEET:*     *The trustee only opposes the motion inasmuch as we thought this matter had been resolved, we have acted in accordance with what Your Honor asked. And if Your Honor wants us to do something differently, we will.*

*...*

*THE COURT:*     *... I encouraged the trustee to — or specifically authorized the trustee to dismiss that action. To the extent he wishes to, you know, pursue those claims, if he can in light of the trustee's dismissal of them with prejudice, I think that by dismissing them with prejudice and not accepting consideration when offered for those claims Mr. Koshkalda has — should be free to do that because the trustee has by dismissing with prejudice and not taking consideration demonstrated that she believes that those claims have inconsequential value to this estate, right?*

    *And saying that is not an assessment in any way, shape, or form of the merits of those claims, right?*

*MR. SWEET:*     *That — that's right, your — that's — the one thing I would add to that is the trustee's understanding that those claims — and this is, I guess, for the different judge at a different time, but those claims seem to be tied to the Reno case, but that's to someone in L.A. or Reno to decide —*

*THE COURT:*     *Yeah.*

Mop Iso Koshkalda's Motion For Leave

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 14 of 23

<u>*MR. SWEET:*</u>　　　　*— and the trustee's hands off. That's correct, Your Honor.*[34]

The Foxe's attempts to assist the Epson were apparent in numerous occasions.

On September 24, 2018, the Fox filed against Koshkalda a similar adversary proceeding to the one previously filed by its client — the Epson.[35] The Epson and the Fox attempted to consolidate both cases. Koshkalda demanded the Trustee to put a stay on her adversary proceeding in order to save the funds of the Koshkalda's Estate and to allow the similar case to proceed filed by the Epson. The Fox did not find a "viable" ground to decline the Koshkalda's offer for stay. The Fox's adversary proceeding was stayed, and the Epson's one proceeded further.[36]

The adversary proceeding filed by the Epson resulted in the Bankruptcy Court ruling in favor of the Epson on its Motion for Summary Judgment in favor of the Epson finding Koshkalda's intent to hinder and delay [**_not defraud_**] the Epson and finding that Koshkalda failed to "keep and maintain business records." Koshkalda appealed the decision.

Next, Koshkalda requested the Bankruptcy Court to remove the stay from the adversary proceeding filed by the Fox. The Bankruptcy Court denied it without the Fox's opposition. Koshkalda appealed the Bankruptcy Court's decision.

The Fox, the Trustee and the Accountants hired by the Trustee filed their second interim request to be paid for the services provided. Koshkalda's opposition was filed 1 day late. The Bankruptcy Court ruled approving the requested fees stating among other things that no oppositions were <u>timely</u> filed.[37] The total paid to all professionals of the Koshkalda's Estate for both interim

---

[34]　　Declaration of Artem Koshkalda in Support of Debtor's Motion to Disqualify Fox Rothschild LLP and For Disgorgement of Fees, — <u>Dkt.</u> 689, ¶14, and Exhibit 9 attached thereto — Transcript of the September 13, 2018, hearing, 6:6-7:3;

[35]　　Case No. 3:18-ap-03020 is an adversary proceeding filed by the Epson against Koshkalda; Case No. 3:18-ap-03059 is an adversary proceeding filed by the Fox against Koshkalda;

[36]　　Koshkalda's Decl., ¶4;

[37]　　The Bankruptcy Court ignored the fact that Koshkalda timely dispatched his objection which was delivered and uploaded with one day delay and granted the maximum fees allowed, completely overlooking the fact that courts have an independent duty to award only reasonable compensation regardless of any objections. ("A trustee is not "entitled" to the maximum fee. 11 U.S.C.S. § 326(a) sets a ceiling on fees payable to a trustee. 11 U.S.C.S. § 330(a), however, limits the actual compensation awarded in any case to a reasonable sum. <u>Greenberg v. Anderson</u>, No. CC-06-1034-PaLB, 2006 Bankr. LEXIS 4865, at *1 (B.A.P. 9th Cir. Oct. 24, 2006) citing

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016　　Doc# 829　　Filed: 12/09/19　　Entered: 12/09/19 16:12:47　　Page 15 of 23

1   applications and from the sales of real properties equal to $1,056,351.20, while there is left only
2   about $258,000 for the creditors. Koshkalda moved the Bankruptcy Court to reconsider its prior
3   decision and to take under consideration the Koshkalda's objection. The Bankruptcy Court denied
4   it. Koshkalda appealed.

5   Next, Koshkalda moved the Bankruptcy Court to disqualify the Fox and to order the
6   disgorgement of all previously paid funds from the Koshkalda's Estate. The Fox opposed stating
7   that it is "too late" and the Fox did reveal its connection to the Epson. In his reply Koshkalda pointed
8   out that the Fox was obligated to reveal "all their connections" to the Epson, and not just the
9   "existence" of the connection. Notably, the Fox did not even bother to answer simple questions —
10  how much business the Epson brought to the Fox in recent years and how many hours in total the
11  Fox performed servicing the Epson. ***Even under the risk of being disqualified and under the risk***
12  ***of being ordered by the Bankruptcy Court to disgorge about $450,000 previously paid from the***
13  ***Koshkalda's Estate funds the Fox refused to provide anything beyond just the identification of***
14  ***the "existence" of the connection to the Epson and not a thing beyond that. The Fox completely***
15  ***overlooks that it is the Fox's burden (duty) to reveal "all" of its connections to the parties at***
16  ***interest.*** That issue is pending the Bankruptcy Court's further decision.[38]

17  Imagine the reaction of the IRS if in the tax filing a taxpayer would have provided a
18  statement that "earnings exist" and not a thing beyond that. How would the IRS estimate whether
19  the person owes any taxes, and, if so, then how much is owed? Here, the Fox identified just the
20  "existence" of the connection to the Epson and not a thing beyond that.

21  In this Motion Koshkalda requests leave of Court to sue the Trustee and the Fox in the
22  State[39] or District Court for breach of their fiduciary duties and related causes of actions to
23  Koshkalda and all the creditors of the Koshkalda's Estate.

24

25  Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet), 251 B.R. 103 (B.A.P.
    9th Cir. 2000).
26      [38]    See Dkt. 804, which is an Order continuing hearing on Motion To Disqualify Fox
    Rothschild LLP on December 19, 2019.
27      [39]    All claims raised by Koshkalda are the State law claims, therefore, the State Courts
28  may have a subject matter jurisdiction over these claims unless the Trustee wants to remove it to
    the federal court.

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 16 of 23

# LEGAL ARGUMENTS

## A.   LEAVE OF COURT

### 1.   LEGAL STANDARD.

The Barton doctrine takes its name from the United States Supreme Court's decision in Barton v. Barbour. In Barton, the Supreme Court ruled that the common law barred suits against receivers in courts other than the court charged with the administration of the estate. The Court held in Barton that, before suit is brought against such a receiver, leave of the court by which the trustee was appointed must be obtained. Beck v. Fort James Corp. (In re Crown Vantage, Inc.), 421 F.3d 963, 967 (9th Cir. 2005, emphasis added).

"...[d]ebtors sought to sue trustee for acts done in the trustee's official capacity . . . were required to seek leave to sue in any other court. Debtors had to submit the grounds for a suit by either a motion or a complaint." Kashani v. Fulton (In re Kashani), 190 B.R. 875, 878 (B.A.P. 9th Cir. 1995).

The district court is a different forum than the bankruptcy court for purposes of the Barton Doctrine. This is true despite the fact that a bankruptcy court's jurisdiction is derivative of the district court's. 28 U.S.C.S. §§ 157, 1334. Blixseth v. Brown, 470 B.R. 562, 564 (D. Mont. 2012).

On a motion for leave to sue a bankruptcy trustee for negligence or breach of his duty of care while performing his official duties, a bankruptcy court should consider a number of issues including: (1) whether the claims asserted pertain to actions taken by the trustee while administering the estate; (2) whether the claims asserted involve acts taken by the trustee under a statute or orders of the bankruptcy court, which may entitle the trustee to quasi-judicial or derived judicial immunity; (3) whether the plaintiffs seek a judgment against the trustee personally; and (4) whether the claims allege breach of the trustee's fiduciary duty, negligence or willful misconduct. Krasnoff v. Marshack (In re Gen. Carriers Corp.), 258 B.R. 181, 184 (B.A.P. 9th Cir. 2001).[40]

---

[40]   Krasnoff has cited the controlling case in the Ninth Circuit regarding leave of court elements outlined in the Kashani v. Fulton (In re Kashani), 190 B.R. 875 (B.A.P. 9th Cir. 1995);

Case: 18-30016   Doc# 829   Filed: 12/09/19   Entered: 12/09/19 16:12:47   Page 17 of 23

## 2. APPLICATION.

The Debtor asserts claims against the Trustee, Fox and Epson including but not limited to (1) for breach of fiduciary duty of due care; (2) breach of fiduciary duty of loyalty, (3) aiding and abetting a breach of fiduciary duty; (4) civil conspiracy, (5) aiding and abetting civil conspiracy, (6) willful misconduct.

As a matter of fact, the claims asserted by the Debtor pertain to actions while the Trustee was administering the Koshkalda's Estate. In pertinent part, Koshkalda alleges that the Trustee while administering the Koshkalda's Estate did not exercise her duty of due care and allowed an employment of non-disinterested counsel — the Fox — to handle the claims of the Koshkalda's Estate against the Epson while the Fox represented the Epson in other unrelated matters.

The Fox admitted that the Trustee used a "hands off" approach in this case. The Trustee has hired not disinterested counsel that holds an interest adverse to the Koshkalda's Estate's interest. The Trustee's "hands off" approach allowed the Fox to do all the work for the Trustee. The Fox protected the interests of the Epson over the interests of the Koshkalda's Estates. The Fox managed to dismiss the Wrongful Seizure Action of the Koshkalda's Estate against the Epson "with prejudice" with no benefit for the Koshkalda's Estate.

> **(1)** ***Whether the claims asserted pertain to actions taken by the trustee while administering the estate — "Yes."***

This factor is in favor of the Bankruptcy Court retaining the jurisdiction and denying this Motion.

> **(2)** ***Whether the claims asserted involve acts taken by the trustee under a statute or orders of the bankruptcy court, which may entitle the trustee to quasi-judicial or derived judicial immunity — "No."***

The Fox while representing the Epson in other matters and on behalf of the Trustee filed a notice of voluntary dismissal of the Wrongful Seizure Action against Epson "with prejudice" with no benefit for the Koshkalda's Estate.

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 18 of 23

The Bankruptcy Court never allowed the dismissal of the Wrongful Seizure Action to be done "with prejudice." The Trustee and her professionals are not protected by the quasi-judicial nor by derived judicial immunity for dismissing the Wrongful Seizure Action "with prejudice."

On June 28, 2018, the Bankruptcy Court entered an Order Granting In Part Debtor's Motion To Compel Abandonment which authorized the Trustee to dismiss the Wrongful Seizure Action recently commenced in the United States District Court for the Central District of California [Artem Koshkalda etc. v. Seiko Epson Corp. et al., Case No. 2:18-cv-0527-FMO-AGR].[41]

Instead of complying with this Bankruptcy's Court's Order to dismiss The Wrongful Seizure Action, the Trustee's Counsel — the Fox — in an attempt to protect its valuable client — the Epson — from resolution of that matter on merits, dismissed the Wrongful Seizure Action "with prejudice" with no benefit to the Koshkalda's Estate.[42]

Puzzled with such illogical actions by the Trustee and the Fox, the Bankruptcy Court raised its concerns during the hearing on September 13, 2018, where the Court stated verbatim:

**THE COURT**: *You know I'm not criticizing the trustee for dismissing that Central District case. That was absolutely the right thing to do. But having dismissed that case with prejudice, doesn't that by implication mean that these claims have no value to this estate?*

The Fox's dismissal "with prejudice" of the Wrongful Seizure Action of the Koshkalda's Estate against the Epson is aligned and consistent with the Fox's duty of loyalty to its valuable client — the Epson.[43]

It is true that the law shields trustees from the liability if one acted under the statute(s) or pursuant to the court's order. ("*As an officer of the court, the trustee is entitled to a form of derivative judicial immunity from liability for actions carried out within the scope of the trustee's official duties. A trustee is entitled to such immunity only if the trustee is acting within the scope of authority conferred upon the trustee by the appropriate statute(s) or the court.*") See Curry v. Castillo (In re Castillo), 248 B.R. 153, 160 (B.A.P. 9th Cir. 2000).

---

[41]  Dkt. 190;
[42]  Koshkalda's Decl., Dkt. 813, ¶11, and Exhibit 6 attached thereto, which is a Dkt. 15 in Case No. 2:2018-cv-05087;
[43] Debtor incorporates by reference all arguments raised in Debtor's Motion To Disqualify Fox Rothschild LLP and Fees Disgorgement [Dkt. 687];

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 19 of 23

Under the <u>In re Castillo</u> holding the Trustee could have acted either by (i) the appropriate statute(s) or (ii) pursuant to the court's order in order to be immune from liability. Here, the Trustee did not act pursuant to the statute(s) therefore for the purpose of this analysis it is irrelevant. The only issue here is whether the Trustee acted in accordance with the Bankruptcy's Court's Order to Dismiss the Wrongful Seizure. The Trustee did not act as the Bankruptcy Court specifically instructed.

Here, the Trustee and her counsel — the Fox — were acting outside of the scope of the authority imposed by the Bankruptcy Court's Order when the Wrongful Seizure Action was dismissed "with prejudice" while the Bankruptcy Court authorized only a dismissal of the Wrongful Seizure Action. As a result, the quasi and derived immunity do not apply here when the Fox on behalf of the Trustee by their own actions eliminated themselves from such immunity. While the Fox's intent is defined by their duty of loyalty owed to its client — the Epson, the Trustee's intent is unclear and the subject for further discovery.

Therefore, the Trustee and the Fox exceeded their authority and are not entitled to the quasi-immunity protection under the <u>In re Castillo</u> holding. [44]

As a direct result of the Trustee's dismissal of the Wrongful Seizure Action "with prejudice" the Koshkalda's Estate's claim against the Epson was destroyed which led to the Koshkalda's ability to access the wrongfully seized from Koshkalda items and to defend an Adversary Proceeding Case No. 18-03020-HLB initiated by the Epson for failure to keep and maintain business records pursuant to 11 U.S. Code §723(a)(3). At the moment of the Fox's dismissal "with prejudice" of the Wrongful Seizure Action against the Epson the Fox and the Trustee were fully aware that there was a pending adversary proceeding initiated by the Fox's client — the Epson — against Koshkalda for failure to preserve business records. The Epson prevailed on its Motion for Summary Judgment on that claim against Koshkalda which is on appeal at the moment.

---

[44] The Debtor repeatedly requested from the Trustee to confirm or deny the fact that the Trustee authorized the Fox Rothschild LLP do dismiss the Wrongful Seizure Action with prejudice. The Trustee has never responded. For the purpose of this Motion the Trustee had a last clear chance to disassociate herself from the Fox but she chooses not to do so grabbing the anchor as it goes down.

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 20 of 23

This factor is in favor of the Bankruptcy Court granting the Motion.

> **(3)** ***Whether the plaintiffs seek a judgment against the trustee personally — "Yes."***

Koshkalda will seek a judgment against the Trustee personally.

The Trustee in her personal capacity has chosen to achieve a personal gain using her power and authority rather than to promote the best interests of the Koshkalda's Estate. Despite multiple Koshkalda's mathematical calculations, motions, declarations showing that the proceeds form the sales (liquidation) of the Koshkalda's Estate's assets would be exceeded by the unnecessary administrative expenses the Trustee decided to benefit herself and her professionals for the cost of the Koshkalda's Estate.[45] As the time showed all Koshkalda's concerns with respect to unnecessary administrative expenses became true and it is apparent not just now in hindsight, but from simple mathematical calculations that have been presented to the Trustee numerous times by Koshkalda.[46]

Therefore, Koshkalda chooses to proceed with his claims against the Trustee personally.

> **(4)** ***Whether the claims allege breach of the trustee's fiduciary duty, negligence or willful misconduct — "Yes."***

Koshkalda claims the Trustee's breach of her fiduciary duties.

The Trustee is a very experienced trustee with hundreds if not thousands of cases behind. No prudent person would believe that the Trustee did not know that counsel for the estate should be disinterested and not to hold any interest adverse to the Koshkalda's Estate's interest. It is apparent that the Trustee breached her fiduciary duty. It is possible that it could have been just negligence in the very beginning for the first couple months, but now it is obvious that the Trustee's misconduct was willful as it has been more than 18 months since then with numerous Koshkalda's

---

[45] "In Boldt v. U.S. Trustee (In re Jenkins), 130 F.3d 1335, 1342 (9th Cir. 1997), the Court of Appeals wrote: 'The Trustee cannot effectively expand the maximum limits of Section 326(a) by hiring other people to perform his duties for him, whether they are paralegals, attorneys, accountants or other professional persons, and utilize the potentially unlimited scope of Section 330 as a basis for award of reasonable compensation", citing In re Prairie v. Cent. Ry. Co., 87 B.R. 952, 959 (N.D. Ill. 1988).'" Greenberg v. Anderson, No. CC-06-1034-PaLB, 2006 Bankr. LEXIS 4865, at *17 (B.A.P. 9th Cir. Oct. 24, 2006).

[46] See Dkts. 399; 400; 447; 448; 453; 454; 504 ;505; 724; 725.

complaints about the connection between the Fox and the Epson. The Trustee never moved the Bankruptcy Court to resolve this issue, but rather the Trustee and the Fox keep doing what they did before as a "team."

Koshkalda filed a Motion to Remove the Trustee where Koshkalda outlined all his concerns about the Trustee's failure to exercise her duty of due care and allowing to the hired professionals while being non-disinterested to destroy the valuable assets of the Koshkalda's Estate. In pertinent part, Koshkalda raised his concerns as to the way the Fox was handling the claims against its long-standing client — the Epson — while the Fox simultaneously represented the Epson in other unrelated matters. For the purpose of this analysis the relevant issue here is that at the time the Trustee was opposing the Koshkalda's Motion to Remove the Trustee — the Trustee was on notice of the Koshkalda's concerns.[47] Further Koshkalda sent a letter to the Trustee requesting her to express her position as to whether the Trustee authorized the Fox to act on her behalf when the Fox dismissed the Wrongful Seizure Action against the Epson with prejudice.[48] The Trustee never responded. For the purposes of this analysis it is relevant to the extent that the Trustee was/has been on notice of such actions therefore, by not expressly denying it the Trustee adopted these actions as made on her behalf.

Therefore, this factor is in favor of the Bankruptcy Court granting the Motion.

## B. REMOVE THE TRUSTEE.

### 1. LEGAL STANDARD.

Once assigned to a particular case, a panel trustee can be removed from a pending case only if the bankruptcy court finds "cause" after notice and a hearing. Brooks v. United States, 127 F.3d 1192, 1193 (9th Cir. 1997); 11 U.S.C. § 324(a). "[A]lthough sufficient cause is not defined in the Bankruptcy Code, it is left for the courts to determine on a case by case basis." 3 Collier on Bankruptcy P 324.02, at 324-3 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006). See Dye v. Brown (In re AFI Holding, Inc.), 355 B.R. 139, 148 (B.A.P. 9th Cir. 2006).

---

[47]  Dkt. 431 — the Trustee's objection to Koshkalda's Motion to Remove Trustee;
[48]  Koshkalda's Decl., Dkt. 689, ¶10, and Exhibit 6 attached thereto;

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 22 of 23

1     "It is well established that cause may include trustee incompetence, violation of the trustee's

2 fiduciary duties, misconduct or failure to perform the trustee's duties, or lack of disinterestedness

3 or holding an interest adverse to the estate. Such cause must be supported by specific facts and the

4 party seeking removal has the burden to prove them." <u>Dye v. Brown (In re AFI Holding, Inc.)</u>, 355

5 B.R. 139, 142 (B.A.P. 9th Cir. 2006).

6         **2.**      **APPLICATION.**[49]

7     The Trustee breached her duty of due care when she hired a non-disinterested counsel to

8 represent the Trustee and the Koshkalda's Estate.[50]

9     The Trustee breached her duty of due care when she failed to cure the ongoing conflict of

10 interest between the Fox and the Epson to the detriment of the Koshkalda's Estate despite numerous

11 signs of it.[51]

12     As a result, for the reasons stated above, the Trustee should be removed for cause under the

13 holding in <u>Dye v. Brown (In re AFI Holding, Inc.) (citation omitted.)</u>

14                    **CONCLUSION**

15

16     Based on above-mentioned arguments Koshkalda respectfully requests this Court to grant

17 this Motions in its entirety.

18                                  *Pro Se*

19   DATED: December 5, 2019

20                           By: *Artem Koshkalda*

21                             Artem Koshkalda, Debtor

22

23

---

24     [49]     The Debtor incorporates by reference all arguments outlined in this Motion For Leave To Sue Trustee and Fox Rothschild LLP and Trustee's Removal as all those issues could

25 and should not have ever happened if the Trustee would not have hired a non-disinterested counsel;

26     [50]     The Debtor incorporates by reference all arguments raised in the MOP ISO Motion to Disqualify Trustee [Dkt. 399];

27     [51]     The Debtor incorporates by reference all arguments outlined in the MOP ISO

28 Debtor's Motion to Disqualify Fox Rothschild LLP and Fees Disgorgement [Dkt. 688];

MOP ISO KOSHKALDA'S MOTION FOR LEAVE

Case: 18-30016    Doc# 829    Filed: 12/09/19    Entered: 12/09/19 16:12:47    Page 23 of 23